No. 82.—LEVI B. SMITH, executor, plaintiff in error, *vs.* WILLIAM S. JOHNSON, defendant in error.

C. W. S. bequeaths to C. an equal share of his estate, with each of his other children for her own separate estate, and the same shall vest in and be held in trust by L. B. S., for the sole and separate use, benefit, estate and support of said C. and her children, for, and during her natural life, and at her death shall be equally divided between her children, share and share alike; the same shall not be subject to the payment or satisfaction of any debt, contract or obligation of the husband she may hereafter intermarry. C. marries, and dies without having had a child.

*Held,* that an absolute estate passed to C., no part of which was divested, and that her husband was entitled to it.

Trover, in Taylor Superior Court. Tried before Judge WORRILL, at October Term, 1856.

Charles W. Smith died testate about the year 1848, and appointed Levi B. Smith and Joseph Pou, his executors; Levi B. Smith alone qualified. One of the legatees in said will, Catharine Smith, intermarried with William S. Johnson in the year 1852, and died the following year, leaving no child surviving her. The negroes, which are the subject of this action, went into the possession of said William S. Johnson and his wife Catharine, a short time after their marriage. Within the statutory period after the death of said Catharine, plaintiff in error brought this action of trover against William S. Johnson, for the negroes.

It was admitted that plaintiff was the duly and only quali-

fied executor of Charles W. Smith, and that defendant was the legal representative of his deceased wife. The value of the negroes and their hire were also admitted. Plaintiff read the will and closed his case. Whereupon, on motion by defendant's counsel, the presiding Judge granted a non-suit, on the ground that Catharine took an absolute interest in said negroes, under the will, and the same, on her marriage, became the property of her husband, the defendant.

The following is a copy of the will, under the fith clause of which the questions involved in this case arise, to-wit:

*Copy of the will of Charles W. Smith.*

GEORGIA, } In the name of God, Amen. I Charles TALBOT COUNTY. } W. Smith, of the State and county aforesaid; being infirm of body, but of sound mind and disposing memory, and knowing that it is appointed for all men to die, do make, publish and declare this my last will and testament.

*Item* 1. I will that all my just debts be paid.

*Item* 2. I give and bequeath to my beloved children, all my estate, both real and personal, upon the terms and in the manner following, that is to say: I give and bequeath to my beloved daughter, Sarah Stanton, wife of William Stanton and her children, so much of my estate, as, when it is added to and incorporated with what said William Stanton and said Sarah have already received from me, and for which I hold receipts and notes, will make an amount equal to the distributive share of each of my other children, for the sole and separate use, estate, benefit and support of my said daughter Sarah and her children. The same shall vest in and be held in trust by my son John H. Smith for my said daughter Sarah and her children, that are now or may hereafter be born, for and during the natural life of my said daughter Sarah, and at her death shall be equally divi-

ded among her children, share and share alike ; and the property hereby given to my said daughter, shall not be subject to, or in any manner liable for the payment or satisfaction of any debt, contract or obligation of said William Stanton.

*Item* 3. I give and bequeath to my beloved daughter, Caroline Dennis, widow of Ephraim W. Dennis, deceased, and her children, so much of my estate, as, when added to and incorporated with what her late husband Ephraim W. Dennis and my said daughter Caroline have received from me (and for which I hold receipts and notes) will make an amount equal to the distributive share of each of my other children. The same shall be vested in and held in trust by my son Levi B. Smith for the sole and separate use, estate, benefit and support of my said daughter Caroline and her children, for and during her natural life, and at her death, shall be equally divided among her children then in life, share and share alike. The same shall not be subject or liable to pay or satisfy any debt, contract or obligation of the husband with whom she may hereafter intermarry.

*Item* 4. In like manner I bequeath to my beloved daughter, Harriet Bussey, wife of Nathan J. Bussey and her children, so much of my estate as when added to and incorporated with what said Nathan J. Bussey and my said daughter Harriet may have received from me (and for which I hold receipts and notes,) make an amount equal to the distributive share of each of my other children, which shall be and remain the sole and separate estate and property of my said daughter Harriet and her children, for her and their own separate use, benefit and support during the life of the said Harriet, and at her death shall be equally divided between her children, share and share alike.

*Item* 5. I give and bequeathe to my beloved daughter Catharine, an equal share of my estate, with each of my other children for her own separate estate, and the same shall vest in and be held in trust by my son Levi B. Smith, for the sole and separate use, estate, benefit and support of

the said Catharine and her children, for and during her life, and at her death shall be equally divided between her children, share and share alike. The same shall not be subject to the payment or satisfaction of any debt, contract or obligation of the husband with whom she may hereafter intermarry.

*Item* 6. I give and bequeath to my other children the whole of the balance of my estate, real and personal, to be equally divided among them with due regard to what each one of them may have heretofore received, and for which they are to account. The distribution of the whole of my property is to be made in accordance with the laws of distribution, now of force in the State of Georgia, and if either one of my children should die before myself, then the share of such child or children so dying, shall be received by the lawful representive of such child or children.

*Item* 7. I hereby nominate and appoint Joseph Pou and Levi B. Smith, executors of this my last will and testament.

In testimony whereof, I have hereunto set my hand and seal, this 11th day of July, 1846.

CHARLES W. SMITH, [L. S.]

Signed, sealed, declared and published in the presence of us, who have subscribed the same in the presence of testator, and of each other.

WILLIAM STALLINGS,
THOMAS H. PERSONS,
WILLIAM D. ELAM.

To the decision, awarding a non-suit, plaintiff excepted, and assigned error thereon.

POU and HALL, for plaintiff in error.

HOLSEY and JONES, for defendants in error.

*By the Court.*—McDONALD, J. delivering the opinion.

The testator's daughter, Catharine, was single at the date of his will and continued so down to the time of his death. In disposing of his property, he gave and bequeathed unto his beloved daughter Catharine, an equal share of his estate with each of his other children, for her own separate estate, and the same shall vest in and be held in trust by his beloved son Levi B. Smith, for the sole separate use, benefit estate, and support of said Catharine and her children, for and during her natural life, and at her death shall be equally divided between her children, share and share alike; the same shall not be subject to the payment or satisfaction of any debt, contract or obligation of the husband with whom she may hereafter intermarry.

Catharine married William S. Johnson, and died, leaving no child. The property sued for, was Catharine's part of the negroes, received by her trustee, on the distribution of her father's estate, and which, on her marriage, had been turned over to her husband. The defendant's counsel moved before the Court below, and the Court awarded a nonsuit, on the ground that the will vested an absolute estate in Catharine. This judgment of the Court is assigned as error.

In determining the construction due to the clause of the will under which the parties respectively claim the property sued for, we must consider the entire will in connection with the agreed statement of the parties. In the first place then, the testator intended to dispose of his whole estate, finally and absolutely, by his will, and did not intend to die intestate in respect to any part of it.

The second item begins thus: " I give and bequeath to my beloved children *all my* estate both real and personal," upon the terms and in the manner following, &c. &c.

He gives to several of his children, specially mentioned, an equal share of his estate, but he gives to none a *specific legacy,* and then, in the sixth clause of his will; he gives

and bequeaths unto his other children the whole of the balance of his estate, real and personal, &c.

He does not die intestate in regard to any part of his estate.

He had an object in mentioning specially the names of some of his children in his will, while he omitted the names of others, and that object is apparent from the face of the will and the agreed facts, which, so far as may be necessary to elucidate the intention, will be hereinafter stated. His children seem to have shared equally his affection and kindness. Each shared his bounty equally with the rest. By the second item of his will, he bequeathed to his daughter, Mrs. Stanton, her share of his estate, and settled to her sole and separate use, and for the support of herself and children, free from the debts of her husband. The property at her death, was to be equally divided amongst her children. The property given to his daughter Mrs. Dennis, whose husband was dead, was secured in the same manner, to be protected against the improvidence and debts of any husband she might thereafter marry, and remainder to her children. The property for his daughter, Mrs. Bussey, he gives in the same way, except, for her and her children he appoints no trustee.

According to the agreed statement he had, at the time of the making of the will, ten children, all of whom survived him. Six of them were daughters. The names of two of his daughters do not appear in the will, nor does that of any of his sons, except as executor or trustee. No specific legacy is given to any of his children. There is but one specific bequest and that is (in a codicil to his will) to his wife, of his barouche and horses or ponies, accustomed to draw it. His wife, it appears from the statement had an estate of her own, which rendered it unnecessary to make further provision for her. The daughters, whose names do not appear in the will, were Willie Ann Hardison, wife of William B. Hardison, and Emeline Wooldridge, wife of William G. Wooldridge. The marriage of Emeline and her husband took

place about eight years before the date of the will, at which time (the date of the will,) they had several children.   Willie Ann and her  husband had been married upwards of fifteen years at the date of the will.   They had several children. The husbands of both these daughters were, at the date of the will, and continued to be, kind, steady, prudent, provident and thrifty men, and were in affluent  circumstances.   Harriet, (Mrs. Bussey,) and her husband were married about two years before  the date of the will.   They had  two children. He had then and  still has a respectable property,  and was, and is, a steady and  thrifty man.   His  character for providence, management,  and all  the  properties of good husbandry, was  not so  well established and known to the testator, at the  date of the  will,  as the characters, in these respects, of Hardison and Wooldridge.   The husband of Sarah, (Mrs. Stanton,)  had  never, up to the date of the will, manifested anything like energy or  thrift, but a contrary character, and was without an estate worth naming.   The sons of the testator were all  of age at the date of the will, and were steady in their habits, and careful of their interests.   Catharine was about sixteen years of age, and  she  and a brother were the only children residing with the testator at the time. The foregoing is the  only part  of the agreed  statement necessary to be considered.   In  the  latter part  of the sixth item of the will is this provision ;  " if  either of  my children should die before myself, then  the  share of such child or children so  dying shall be received  by the  lawful representative of such child or children."

The will shows no  intention  on the part of  the testator to create an estate tail or a perpetuity.   There is no limitation over, on the dying without issue or children of either son or daughter.   It  is  true, that  it appears that all the married daughters had  children, yet all the children might have died in the life time of  the parent.   It does not appear that all the sons were married.   It is probable that one of  them was not, as he lived with the testator at the date of the will, and there

was no gift over of his share on his death without a child. It does not appear to have been the testator's purpose to have perpetuated, in his family, the property he left to his children. What was his purpose, then, in giving the property in trust to some of his daughters with the remainder to their children respectively? Mr. Stanton was an improvident man, and his wife had children, and the testator's intention and desire were that they should enjoy the support which their share of his estate might afford them, and he gave it to her sole and separate use, but gave it absolutely, to them jointly with remainder to the children, and appointed a trustee.

To Mrs. Dennis, he gave the property upon similar trusts. She might intermarry with a husband whose improvidence might expose her to want, and against that possibility he intended to protect her. There was a trustee appointed for her and her children.

Mrs. Bussey's property he settled in the same way, but appointed no trustee. Mr. Bussey had not been so long in his family as some of his other sons-in-law, but he had been long enough there for him to become acquainted with and appreciate his management to a certain extent; yet not to establish him so fully in his confidence as to assure him that a change in his circumstances might not bring difficulties on his daughter. He omitted the appointment of a trustee, probably, because he was as well satisfied of the prudence and good management of Mr. Bussey as he could be with those of any trustee whom he might appoint. He appointed a trustee for his unmarried daughter, whose fortunes were all in the future, and for the same reasons, settled her property on her. To his other two daughters, in the management of whose husbands he seems to have had entire confidence, he did not give the property in trust. Their shares passed to them absolutely. He did not give it over in remainder to the children. Here is strong evidence that his only purpose in giving the property in trust to any of his daughters was

to secure the enjoyment of it to them and their children, in the same manner that settlements are made by Courts of chancery to protect the property of wives against the improvidence of husbands. Such settlements do not extend beyond the purposes for which they were made. The testator made an absolute gift. The law of descent covers an absolute estate. The testator provided that this absolute gift should be so held as to secure his bounty to the objects of it, but not to be extended beyond the existence of these objects. It is the same object, unexpressed by the source from which it flows, that Courts of chancery carry into effect. If there had been children by this marriage, the case might have been different, but it is not necessary to consider that. The words of the will are strong enough, and do vest in Catharine an absolute interest. I give and bequeath to my beloved daughter Catharine, an equal share of my estate with my other children, for her own separate estate, and he proceeds to say how it shall be held, and gives a remainder which is necessarily contingent on her having a child. The contingency never happened upon which alone the remainder could take effect. That cannot divest the vested interest. The case of *Harrison vs. Foreman,* 5. *Vesey Jr.* 207, is a case bearing strongly on this. In that case, the Master of the Rolls remarked, that " it is perfectly clear that, when there are clear words of gift, giving vested interest to parties, the Court will never permit that absolute gift to be defeated, unless it is perfectly clear, that the very case has happened, in which it is declared, that interests shall not arise." The whole of the testator's will shows that he intended to give to each of his children a share of his estate, that the shares should be equal, that they should be absolute, that the daughters should be protected against the improvidence or prodigality of their husbands, and nothing more, except that, if there were children they should receive the benefit. The absolute interest having passed, precludes the idea of a reversion. Having once absolutely passed, and no

contingency having happened, upon which it was to be divested, it remains vested, and does not revert. The case of *Whittle vs. Dudin*, 2. *Jacob and Walker* 278, is a still stronger case. The case of *Joslin vs. Hammond* went upon the intention of the testator. We put this case on the testator's intention, but it seems to me that the Master of the Rolls came near making an intention for the testator, in that case, which he did not express.

We are of opinion, that under the circumstances admitted to exist in the case, on a construction of the whole will, an interest in the property vested absolutely in Catharine, the daughter, and that nothing having happened to divest it, her husband is entitled to it.

Judgment affirmed.