JOHN C. BURCH, ex'or, plaintiff in error, *vs.* JOHN W. BURCH and others, defendants in error.

Testator, by his will, *lends* to his wife the whole of his estate, during her natural life or widowhood; but in the event of her marriage, he directs that his estate be divided into three equal parts. One part he *lends* to his wife during her natural life, and at her death over to her blood relations. One other part he lends to his sister, B. C., during her life, and the other share he directs to be sold, and the moneys arising from said sale to be equally divided between his brothers and sisters, (naming them, nine,) to them share and share alike forever, but if either of his said brothers and sisters should decease, leaving no child or children, then he directs that their part of said legacy be equally divided betwixt the whole of his brothers and sisters above named, to each of them forever. He further provides that if his wife should not marry, then, at her death, the whole of his estate be sold, and the proceeds divided into three parts; one part he gives to his wife's relations; one part to his sister, B. C., during her life, and at her death to his brothers and sisters; the other third or part of the money he gives to be equally divided between the whole of his above named brothers and sisters, in manner above mentioned, and to each of them forever. The widow never married. Two of testator's sisters died childless, and all his brothers and sisters died before his widow, the tenant for life.

*Held,* 1st. That only *the children* of a deceased brother or sister, *living* at the death of the tenant for life, were entitled to the share of their parent, and that they took directly from testator, and not through their father or mother.

2d. That the remainder never having vested in the brother and sisters, all of whom died before the tenant for life, that neither the widow nor the grandchildren of the brothers and sisters were entitled to any part of the estate.

3d. That the children living at the death of the tenant for life, could assert their claim and title in their own right, and that the administrator of their deceased parent was not a necessary or proper party.

4th. That only the children of the deceased brothers and sisters, *living at the death of the tenant for life,* were also entitled in the place and stead of their parents to their share or estates of any brother or sister who died, leaving no child or children.

Equity, from Elbert. Decision by Judge THOMAS, at chambers, 2d November, 1857.

This was a bill filed by John W. Burch, Thomas C. Burch, Thomas Wright and wife, William T. Givens and wife, —— Rice and wife, William Wright and wife, John P.

Wright and wife, against John C. Burch, executor of Elizabeth Burch, deceased.

The bill stated that William S. Burch, of Elbert county, departed this life in January, 1822, leaving in full force his last will and testament, of which the following is a copy:

In the name of GOD, amen!

. I, William S. Burch, of the State of Georgia and county of Elbert, being weak and infirm in body, but of sound mind, memory and understanding, do make and publish this my last will and testament, in manner and form following, to-wit:

First. I recommend myself to GOD, the Giver and Creator of all good, sincerely thanking Him for all blessings, civil and religious, conferred upon me during my existence in this changeable and uncertain life.

Item. My will is, that all my just debts be paid.

Item. I lend to my beloved wife, Elizabeth, the whole of my estate, both real and personal, during her natural life or widowhood; but if she chooses to marry, then, and in that case, my will is, that the whole of my estate be taken out of the hands of my said wife, Elizabeth, by my executors, which I shall hereafter name, and be equally divided by appraisement, into three equal shares, share and share alike, and that my said wife, Elizabeth, take her choice of one share, or one-third part of my estate, so divided as aforesaid, which share, or the one-third of my estate so divided as aforesaid, I lend to my said wife, Elizabeth, after her second marriage, during her natural life; and that the share or one-third part of my estate so lent my said wife, Elizabeth, be under the management, direction and control of my said executors, for the support of my said wife, Elizabeth, after her second marriage, so long as she shall live; and at her death, that the said share or one-third part of my estate, so lent my said wife, Elizabeth, after her second marriage, under the directions of my executors, to be sold, and the moneys arising from said

sale to be put into four equal shares, share and share alike; one share or one-fourth part of the said moneys, I give and bequeath to be equally divided betwixt the whole of the children of Sarah Harden, wife of Henry Harden, she, the same Sarah, being sister to my said wife, Elizabeth, and is to them, the said children, share and share alike, forever; one other share or one-fourth part of said moneys I give and bequeath to be equally divided betwixt the whole of the children of Polly Wilbourn, wife of Thomas Wilbourn, she, the said Polly, being sister to my said wife, Elizabeth, and is to them, the said children, share and share alike, forever; one other share, or one-fourth part of said moneys, I give and bequeath to be equally divided betwixt the whole of the children of Rebecca Upshaw, wife of John Upshaw, junior, she, the said Rebecca, being sister to my said wife, Elizabeth, and is to them, the said children, share and share alike, forever; the other share, or one-fourth part of said moneys, I give to be equally divided betwixt Mary Ann Cook and William T. O. Cook, heirs of William T. Cook, deceased, he, the said William, being brother to my said wife, Elizabeth, and is to them, the said Mary Ann and William T. O. Cook, share and share alike, forever.

Item. My will is, that if my said wife, Elizabeth, should marry, then, and in that case, I lend to my sister, Betty Cook, one other share or third part of my estate, so divided by appraisement as aforesaid, during her natural life, for her support, which share or third part of my estate, so lent to my said sister, Betty, be under the management, direction and control of my executors, for the support of my said sister, Betty, so long as she shall live.

Item. If my said wife, Elizabeth, should marry, then, and in that case, my will is, that the other share, or one-third part of my estate, so divided by appraisement as aforesaid, be so sold, and the moneys arising from the said sale, be equally divided betwixt my brothers and sisters, to-wit: Thomas Burch, Benjamin Burch, Maza Burch, John Burch, Cheadle

Burch, ex'or, vs. Burch et al.

Burch, Polly Johnson, Jenny Divine, Hannah C. Perkins and Sarah Kesee, and is to them, my said brothers and sisters, share and share alike forever; but if either of my said brothers or sisters should decease, leaving no child or children, then, and in that case, my will is, that their part of said legacy be equally divided betwixt the whole of my brothers and sisters above named, and is to each of them forever.

Item. And in case that my said wife, Elizabeth, should not marry, then, and in that case, my will is, at her death, the whole of my estate, both real and personal, be sold and the moneys arising from the same, to be put into three equal shares, share and share alike. One third part of the moneys arising from the sale of the whole of my estate, 1 give to the children of Sarah Harden, Polly Wilbourn, Rebecca Upshaw and the two heirs of William T. Cook, as above mentioned; but if either of the above named sisters to my said wife, Elizabeth, should die, having no child or children, then, and in that case, for their part of said legacy to be equally divided betwixt the surviving children of the above named sisters to my said wife, Elizabeth; and if either of the above named heirs of William T. Cook should die, leaving no child or children, for the other one to receive his legacy; and if both of the said heirs of the said William T. Cook should die, leaving no child or children, then, and in that case, for their legacy to be equally divided betwixt the surviving children of the above named sisters of my said wife, Elizabeth.

Item. One other share or one-third part of the moneys so arising from the sale of the whole of my estate, I lend to my sister, Betty Cook, during her natural life, for her support; but the said share, or one-third part of my estate so lent, be under the management, direction and control of my said executors, for the support of my said sister, Betty, so long as she shall live.

Item. The other share, or one-third part of the moneys so arising from the sale of the whole of my estate, I give and bequeath to be equally divided betwixt the whole of my above

named brothers and sisters, in manner as above mentioned, and is to each of them forever.

Item. At the death of my sister, Betty Cook, my will is, that the share or one-third part of the moneys arising from the sale of the whole of my estate, so lent her under the management, direction and control of my said executors, I give and bequeath to be equally divided betwixt the whole of my above named brothers and sisters, in manner as above mentioned, and is to each of them forever.

Lastly. I appoint my well beloved wife, Elizabeth, executrix, and my trusty friend, John Upshaw, junior, and William Woods, executors of this my last will and testament, utterly revoking all will or wills heretofore made by me.

In testimony whereof, I do hereunto set my hand and seal, this 15th day of May, in the year of our LORD, one thousand eight hundred and seventeen.

Signed, sealed and delivered by the testaror, as his last will and testament.

WILLIAM S. BURCH, [SEAL.]

In presence of
    JOB WESTERN,
    BAILY M. WOODS,
    WILLIAM WOODS.

The bill also stated that this will was dated the 15th May, 1817. That the next of kin of said testator at the time of his death, were his widow, the said Elizabeth Burch, and the following brothers and sisters, to-wit: Thomas Burch, *Benjamin Burch*, Maza Burch, John Burch, Polly Johnston, Jenny Divine, Hannah C. Perkins, and Betty Cook, afterwards Betty Hardeman, and the children of Cheadle Burch, a brother who died before the making of said will.

That the widow, Elizabeth Burch, and William Woods qualified as executrix and executor, and took possession of the estate, real and personal, belonging to testator, and worth about fifteen thousand dollars, and which consisted of land,

negroes, cash, notes, &c.   That Woods, the executor died, and left Mrs Burch sole executrix, who remained in the use, enjoyment and possession of the entire estate until her death, which occurred the 1st July, 1855, without ever marrying a second time; that she left a will and appointed John C. Burch, the defendant, executor, who duly qualified, and took possession of the whole estate in remainder, and by virtue of, and in execution of the will of William S. Burch, has sold all the lands, negroes and other property, amounting to about the sum of one hundred thousand dollars, and the proceeds of which sale are now in his hands, to be paid over and disposed of agreeably to the provisions of the will of said William S. Burch, deceased.

The bill further stated that at the death of testator, William S. Burch, the sum of about $3,700, in cash, notes, &c., came into the possession of his widow, the executrix and tenant for life, and complainants claim that defendant, as her executor, should account for, and pay over the same to the remainder-men.   And further, that he should account for the hire or value of the slaves, about one hundred in number, employed in finishing the crop, after the death of the tenant for life, to-wit: from 1st July, 1855, to the time of their sale, about 1st February, 1856.

The bill further stated that Betty Cook, afterwards Hardeman, and all the brothers and sisters of testator named in his will, (except his sister, Sarah Kesee,) departed this life before the death of his widow, the tenant for life, and all, except Jenny Divine, left children surviving.   That Jenny Divine died childless, in the early part of 1855, being the last survivor of all the brothers and sisters.   Cheadle Burch died before the will was made, leaving a widow and children who are still living.   Sarah Kesee resided in North Carolina, having children, but that she nor her children have been heard from since 1808, and are presumed to be dead.

The bill further stated that *Benjamin Burch* died intestate in Morgan county, Illinois, in April, 1831, leaving as his

next of kin and heir at law, his widow, and complainants, John W. Burch and Thomas C. Burch, Mrs. Givens, Mrs. Rice, and the two Mrs. Wrights, his children, and the children of three deceased sons, who died after the death of their father, the said *Benjamin Burch*, but before the death of the tenant for life.

The bill also stated that Dozier Thornton, of Elbert county, Georgia, has taken out letters of administration on the estate of the said *Benjamin Burch*, and also upon the estates of his three deceased sons above mentioned, and is professing to represent their estates and interests.

Complainants claimed that, under the will of their grandfather, William S. Burch, and the foregoing state of facts, they are entitled to the entire share or estate, which their father, the said Benjamin Burch, would have been entitled to, had he survived the tenant for life, to-wit: to one-seventh of two-thirds of the estate of the William S. Burch, the testator.

To this bill the executor, John C. Burch, demurred, on the following grounds:

1st. Because complainants are not entitled to sue for the share or estate of their father, but that his administrator (Thornton) is alone entitled to sue for and recover the same.

2d. If complainants are entitled to sue they are not entitled to the whole of their deceased father's interest, but that the representatives of their deceased brothers, to-wit: William S. Walton, and Shelby M. Burch, are entitled to an equal share with complainants.

3d. The widow of Benjamin Burch, deceased, is entitled to an equal share with complainants.

4th. Complainants are not entitled to sue for and have an account of the part or share of said estate bequeathed to Jenney Divine.

5th. Complainants are not entitled to sue for and have an account of the share bequeathed to Sarah Kesee.

6th. Complainants are not entitled to sue for and have an account of the share of said estate, being one-third thereof, bequeathed to Betty Cook, after the death of the tenant for life.

After argument, the Chancellor overruled the demurrer, and counsel for defendant excepted.

T. W. Thomas and T. R. R. Cobb, for plaintiff in error.

Akerman, for defendants in error.

The Court not being unanimous, delivered their opinions *seriatim.*

McDonald, J. delivering the opinion of the Court.

This is the fourth time that the will before us has been presented to this Court, for the determination of some matter connected with it. Change of circumstances since it was made, as well as facts unknown to the testator at the time it was written, have given rise to much doubt in regard to the rights of parties claiming under it, and perplexity to those charged with the execution of it. It is more than forty years since the will was written; his widow, to whom the testator lent the whole of his property during her natural life, survived the date of the will more than thirty-eight years, and all but one of those whom he desired and expected to be his legatees at her death, departed this life before the determination of the life estate, and that one has not been heard of, for nearly fifty years, and she is probably dead. The complainants are surviving children of Bejamin Burch, one of the brothers of the testator, whom he no doubt expected to survive his widow, but who died before her. Under the allegations of the bill of complainants, and a demurrer filed thereto, the following points are made, to-wit:

1st. Are the complainants entitled to the entire legacy, which their deceased father would have taken, if he had been living at the death of the tenant for life.

2d. Does their mother share it with them?

3d. Is the administrator of their deceased father entitled to it?

4th. Does the administrator of their deceased brothers, who departed this life after the death of their father, but before the death of the tenant for life, have a right to any part of it?

5th. Are the children of those deceased brothers entitled to share it with them?

6th. If the complainants are entitled to recover can they have an account of that part of said property, claimed to have been bequeathed to Jenny Divine?

7th. Can they have an account of the part of the estate claimed to have been bequeathed to Sarah Kesee?

8th. Are they entitled to any part of that third of the property, bequeathed to Betty Cook after the death of the tenant for life.

At the Term of this Court held, at Athens, in November of last year, 1857, it was decided that, upon a proper consideration and construction of the clauses in this will, relating to legacies to the testator's brothers and sisters, the children of any brother or sister, dead at the time of the death of the tenant for life, should take the interest which their deceased parent would have taken, if he or she had been in life at that time, but that they would not take through the parent as his or her heirs at law, but as objects of the testator's bounty, and that such was the manifest intention of the testator. The bill in that case was filed by the children of Cheadle Burch, who was dead when the will was made, claiming by right of representation as his heirs at law, the part of the estate, which, they insisted, had vested in him under the will. We held that they were entitled, but not in the manner claimed, but as being themselves the objects of the testa-

tor's bounty.   We held that if their right depended on his having taken the legacy, it could not be sustained.

The defendant in error, in this case, contend that these complainants, take as heirs at law of their deceased father, who died *after* the testator, but before the tenant for life, and that the portion of the estate intended for him, at the death of the tenant for life, vested in him.   They draw a distinction between this case and the case of Cheadle Burch's children, because, they say, that Cheadle Burch was dead at the date of the will, and Benjamin Burch survived the testator. That does not vary the case in the slightest degree.   The testator lent the whole of his estate, both real and personal to his wife during her natural life, or widowhood.   He appointed his wife executrix, and John Upshaw, Jr., and William Woods his executors.   If his wife chose to marry, the whole of his estate was " to be taken out of her hands by his executors, and equally divided, by appraisement into three equal shares."   One share he lent to his wife, after her marriage, during her natural life, which share was to be under the control and direction of his executors as long as his wife lived. Hence, it appears, that during the whole of the tenancy for life, the executors were entrusted with certain duties, which they might have been called on to perform ; for it could not be possible, during the continuance of the life of the wife, to determine that the first contingency on which the estate was to be divided would not happen.   That contingency not having happened, the estate was not divided, and no claim has been presented or can be presented which depended on its happening.   It is useless to consider the will in reference thereto, therefore, further than it may be explanatory of other parts of the will.

The testator proceeds to declare what shall be done with his property in case his wife should not marry.   *At her death*, he does not give his *property*, but directs it to be sold. The moneys arising from the sale he gives to his legatees. One-third part of the moneys arising from the sale of his

whole estate, he gives and bequeaths to be equally divided
betwixt the whole of his above-named brothers and sisters.
They were named in a prior clause of the will. The money
was to be divided, also, in the manner named in the same
clause. The brothers and sisters named were Thomas Burch,
Benjamin Burch, Maza Burch, John Burch, Cheadle Burch,
Polly Johnson, Jenny Divine, Hannah C. Perkins and Sarah
Kesee. If either of his brothers or sisters " should decease"
leaving no child or children, their part of the legacy was to
be equally divided betwixt the whole of his brothers and sis-
ters above named. Benjamin Burch, the father of the com-
plainants, was one of the brothers named in the will. His
having died in the life-time of the wife, to whom the proper-.
ty was loaned for life, no part of the property vested in him
under the will. This point was ruled, in construing this
will in the case of *Burch et al. vs Burch, ex'or.* 19. *Ga. Rep.*
185. It was there said by the Court, that " the testator did
not intend the title to any of his property to pass out of his
estate during the life of his wife, except in the event of her
marriage." It was also said in that case, that the testator
intended the sale to be made by his executors. I fully con-
cur in that. If the executors had the power to sell, by their
sale and conveyance under that power, the legal title passed
to the purchaser. The testator died possessed of personal
and real estate. He directed it all to be sold at the death of
his wife, and he gave pecuniary legacies raised from the sale,
to his legatees. The whole of his estate was to be sold, and
the whole of the moneys, the proceeds of the sale, he dispos-
ed of. There was nothing to be left to pass to his heirs at law
as heirs. There was no residuum. Where the whole real es-
tate is to be converted into personalty, there is no good rea-
son why the property should not pass to the executor in the
same manner as the property in chattels. *Berry vs. Usher,*
11. *Vesey Jr.* 91. Under our statute of distributions, there
can be no reason why it should not, where there is no sur-
plus to pass to the heirs at law. In this State, real and

personal estate are put on the same footing as to distribution. *Acts of* 1804 *and* 1821. *Cobb* 291 *and* 293. It is settled that an administrator may bring ejectment, as well as an executor, where the lands must be converted for the purposes of distribution, the payment of debts or legacies. An executor is sworn to pay debts and legacies. The property must be in him to enable him to make the sale. Indeed, the legal title must be in him also, to enable him to recover it at law, it would seem. These are the decisions however. In the case before us, if Benjamin Burch had survived the tenant for life, he could have claimed no part of the *property.* He could not have been a tenant in common with others, of the *property*, under the will. He could have constituted himself such tenant by the consent only of all the legatees and every one in that case, must have had the legal capacity to contract and that, on the principle that they were entitled to the entire proceeds when sold. The legacies were pecuniary legacies, and they were given at the death of the wife. The gift and the payment were both postponed to that time. At that time Benjamin Burch was not in life. The gift of the money, then, never vested in him. He was dead and could not take. The administrator, therefore, of Benjamin Burch can claim no part of the money, nor can any one who claims it as one of his heirs at law. Hence his widow is excluded who claims in that character.

It was urged in argument, that the brothers and sisters of the testator named in the will, took an estate in remainder, which vested on the death of the testator. I have shown, that at that time no estate vested in them. The property, for necessary purposes, was in the executors, and was not given to the brothers and sisters, but a part of the money proceeding from the sale of the entire estate was bequeathed to them, if they should be living at the death of testator's wife. But if the property itself had been given in remainder, it could not have vested in the brothers and sisters at

the death of the testator. " In determining whether an estate be vested or contingent, the first subject of enquiry is, whether it be limited to persons in *esse* and ascertained, and stand unconnected with any uncertain event; in which case the estate vests *instanter*, notwithstanding that it be preeeded by a particular estate or estates to which it is postponed in point of usufructuary enjoyment, or possession." The right of the brothers and sisters depended on an uncertain event, and that was, whether they survived the tenant for life. " If any of my brothers or sisters should decease" is the language of the testator " leaving no child or children, then, and in that case, my will is, that their part of said legacy be divided, &c." This will is very inartificially drawn, but it is substantially the same in its provisions as one of the devises in the will in the case of *Elwin vs. Elwin*, 8. *Vesey* 547. The testator, in that case directed, that as to the estates devised to his wife for life, his brother Peter Elwin, his executors and administrators, should, as soon after the decease of his said wife or her refusing to release her dower to his said real estate, as aforesaid as conveniently might be, sell all his aforesaid messauges, lands, &c., and the money arising from the sale thereof, together with the rents and profits thereof, until sold, his mind and will was and he did thereby give the same to be paid and equally divided between his five nephews, naming them (the sons of his brother Peter) share and share alike, at such time as the sale should be completed, in case they should be then living. The testator's will in this case, is that at the death of his wife, the whole of his estate both real and personal, be sold and the moneys arising from the same be put into three equal shares. One share or third of the moneys arising from the sale of his whole estate, he gave and bequeathed, to be equally divided between his brothers and sisters, naming them, and to each of them for ever; but if either of his brothers or sisters should decease, leaving no child or children, then their part of the legacy to be equally divided betwixt the whole of

his brothers and sisters, &c.  This is the will of William S.
Burch.  According to this will the money was to be divided
when the sale was completed, and when divided it was to be
distributed amongst the whole of those named if they should
be then living.  The wills thus far are substantially identi-
cal.  In Elwin's case, the will proceeded, that in case any of
his nephews should depart this life, either in his life-time or
before the sale of his estate should be completed, leaving issue
of his or their body or bodies lawfully begotten, then his
will and mind was that the part or share of him or them so
dying, should be paid to and equally divided amongst the
respective child or children of such of his said nephews so
dying, as aforesaid; but in case any of his nephews should
depart this life in his life time, or before the sale of his said
estate should be completed, without leaving issue of his or
their body or bodies, then it was his will, that the share and
part of the said moneys so arising from the sale of his said
last mentioned real estate, should be paid to and equally
divided amongst the survivors or survivor of them; and in
case of the death of any of them before the time of pay-
ment, as aforesaid, leaving issue, the child or children of
him or them so dying, to have his or their father's share.
The will of Burch is not written out so fully, but the sub-
stance is the same and the construction is the same.  At her
death (that is the death of his wife) he says, his will is that
the whole of his estate, both real and personal, be sold and
the moneys arising from the same to be put into three equal
shares.  One-third part of the monies so arising from the
sale of his whole estate he gave and bequeathed among the
whole of his brothers and sisters.  This was all to be done
at the death of his wife.  He thought it probable that they
might not all live until that time, and he proceeds to say,
that should either of his brothers or sisters decease, leaving
no child or children, then and in that case, his will was, that
their part of said legacy was to be equally divided betwixt
the whole of his brothers and sisters, who had been named.

37

As we have already held, the testator had reference to the period of distribution of the money, the proceeds of the sale, amongst the legatees, when he spoke of the decease of either of his brothers or sisters, and it was as clearly his intention that if either of them was dead at that time, leaving no child or children, his or her part of the legacy should go to the survivors, as it was in the case of Elwin's will, though it was not so fully expressed as to the time. In Elwin's will, there was an express gift of the share of a nephew, who should die, before the sale of the estate, leaving issue of his body lawfully begotten, to his child or children. In Burch's will, there is a total absence of an express gift to the child or children of a deceased brother or sister, who should die, leaving a child or children, but it is clear, that the share of such brother or sister, should not go over to the survivors, and it is equally clear, that the testator did not intend to die intestate, and, as we have already held, it was a bequest by unavoidable implication, to the child or children of the deceased brother or sister. Now, as to the vesting of the legacy. In the case of Elwin's will, the testator died in April, 1776. In this case the testator died in January, 1822. In Elwin's case, the tenant for life died in December, 1797, and the sale of the estate took place in August, 1799 In this case the tenant for life, died in 1855. In Elwin's case, Peter Elwin, one of the nephews of the testator, died in June, 1798, after the death of the testator, and the tenant for life, but before the sale of the estates, leaving children. In this case, Benjamin Burch died in April, 1831, leaving a widow, five children, and grandchildren, born to their sons, each of whom died in his lifetime. The question in the Elwin case, was, whether Peter Elwin having survived the widow, after whose death the estates were to be sold, took a vested interest in the produce of the estates; or whether, as he died before the sale, his children should take the share originally intended for him, and the question here is, whether Benjamin Burch, having survived the testator took a vested interest in the produce of

the estate; or whether, as he died before the tenant for life, at whose death the estate was to be sold, his children should take the share originally intended for him. The Master of Rolls, held, in *Elwin vs. Elwin*, that the nephew, Peter Elwin, having died before the sale, he did not take a vested interest. The proceeds of the sale were given at such time as the sale should be completed.

I hold, that the proceeds of the estate of William S. Burch, were given at the death of the widow. Expunge from the will all that the testator said as to the disposition of his estate in the event of his widow's marriage, except as it is made a part of his bequests and devises, on her death, and the testamentary intention is most clear. At the death of his wife, his estate was to be sold. The produce of the sale made at her death was to be divided into three equal parts, and those parts were to be disposed of as he directed. The gift here was either at the death of the widow or at the period of distribution, but take either point of time, and the property could not have vested in Benjamin Burch, who died during the life of the widow. The testator fixes no time at which the sale must be made, and if the *dictum* of Lord Thurlow, in the case of *Hutchison vs. Manington*, 1 *Vesey*, *Jr.*, 366, may be regarded as authority, that where there is a trust, that is always considered as done, which is ordered to be done, we might consider the sale as made, and the money ready for distribution on the day of the death of the tenant for life, and that the legacy vested at the death, although the sale may have been postponed. I think, therefore, that the legacies, except the life estate, did not take effect or vest in right or possession, until the death of the widow. It follows that the widow of Benjamin Burch is not entitled, as one of the distributees of his estate, to a part of the legacy. If it did not vest in him, his administrator cannot claim it.

Whether the complainant can claim the entire legacy to which Benjamin Burch would have been entitled, or whether his grand-children, whose parents were dead at the death

of the tenant for life, shall share it with them, depends on the testator's intention, to be collected from the will.    Grand-children, as a general rule, cannot come in and take a lega-cy under the description of children, or share with children in such case.    But it is not a rule without exception. Where the gift is to the children of A., but if he die without *issue*, then over, it is held that grand-children may come in because, by the use of a term which would include them, it may be inferred that the testator did not intend to exclude them.    For the reason of the supposed intention of the tes-tator to make provision for children, where a devise was to a man and his children, and there were no children at the date of the will, the word children, in England, is converted into a word of limitation.    In this case, there is no express gift to the children of the brothers and sisters.    The bequest is implied to their children.    Should either of them decease, leaving no child or children, then over.    It is manifest, that if the brothers and sisters had been in life at the time the gift was to take effect, they would have taken, and that on their death intestate, it would have descended to their children, and to the lineal descendants of such of their chil-dren, as may have died intestate during their lives.    Is it too strained a presumption, to suppose that the testator had in his mind our statute of distributions, and that the words, "lineal descendant or descendants," might be substituted for child or children ?    I have no doubt that such is the case in almost every instance in which a testator uses these terms, and I think that we might be justified in so holding in this case. But neither of my brethren agree with me in this view of it, and I regret to say, that the grand-children must be exclud-ed.    It seems to me to be unjust and opposed to the strongest probabilities of the testamentary intention.

Jenny Divine, as far as is known, was the last of the brothers and sisters.    She survived them all, unless Mrs. Kesee is still living or survived her.    But assuming that she survived them all, what becomes of her share of the mo-

ney ? · She died before the tenant for life, and therefore she took nothing. The property was, at the time of her death, in the executors, and on the death of the widow, it became them to look for the legatees answering to the description in the will, as entitled to the pecuniary legacies. Jenny Divine not existing, she could not take; she was not a legatee. The legacy never having been given, the only contingency on which it could take effect, not having happened, it could not lapse. It is manifest, that the testator did not intend that any part of the moneys arising from the sale of his estate, should revert. Two thirds of it he disposed of to his brothers and sisters named, and to the survivors of them, provided those dying, should leave no child or children. We have held, that there was an implied bequest, by the terms of the will, to the child or children of any brother or sister, who should die in the life time of the widow. Jenny Divine left no child, therefore no child could come forward to claim her share. But it is unquestionable, that the testator intended, that the two-thirds of the money arising from the sale of his estate, should go to the brothers and sisters named in the will, or their descendants, and that it should not be otherwise disposed of. The children of the brothers and sisters were, equally with the brothers and sisters, beneficiaries of the testator's bounty, if the brothers and sisters were dead at the time the tenancy for life was determined. This being so, the brothers and sisters being all dead at the time, the children of the deceased brothers and sisters took the entire two-thirds of the money, each set of children taking a share equal to that which their deceased father or mother would have taken, had he or she survived.

It is not yet known whether Sarah Kesee was dead or living at the death of the tenant for life, or if dead, whether she left a child or children. We think with the Court below, that an enquiry should be made for her and her children, and that a share of the money, equal to the amount she would

have a right to claim, if living, should be retained by the executor, to answer to her demand when made.

The death of Betty Cook, during the life of the widow, so that she could derive no benefit from the loan to her for life, after the death of the widow, of one-third of the moneys, the produce of the sale of the estate, certainly cannot destroy the gift over of the same money. Her surviving the tenant for life, was no condition express or implied of the gift over to the brothers and sisters. The gift stands, and her death only removes an obstacle to their enjoyment of the legacy, immediately on the death of the tenant for life of the property, from the proceeds of the sale of which the legacy was given.

The legatees are entitled to an account then, for their share, being the amount to which their deceased father would have taken had he survived the widow of the testator, of two-thirds of the moneys arising from the sale of the estate, counting Mrs. Kesee at present, as a legatee, and postponing the distribution of the amount to which she or her children would be entitled, if living, at the death of the widow, until due enquiry can be made for her and her children.

Judgment affirmed.

LUMPKIN J., concurring.

Being prevented, by sickness, from writing out, at the proper time, a separate opinion in this case, and unwilling to withhold it from the press, I have read the opinion of my brother McDonald, and concur in the main, in the reasons assigned by him, to sustain the judgment of the Court.

BENNING J., dissenting.

The complainants in the bill are Benj. S. Burch's sons and daughters, and the husbands of the daughters. He was a brother of the testator.

The defendant in the bill is John C. Burch, the executor of the testator's will.

The complainants claimed, by their bill, "that they were entitled to the share of Wm. S. Burch's estate which would come to their father, the said Benjamin, were he alive, which share, they say, is one-seventh of two-thirds of the estate."

The executor demurred to their bill, and the Court overruled the demurrer. Thus the Court sustained the complainants in this their claim.

The question, therefore, is, were the complainants entitled to "one-seventh of two-thirds of the estate?"

This, (as we shall see,) will be determined by determining what their father, Benj. S. Burch, would be entitled to if he were alive. Let us, then, enquire, what he would be entitled to, if alive.

To find this, we must find what interest he took by the will.

There is this provision in the will: "If my wife, Elizabeth, should marry, then, and in that case, my will is, that the other share, or one-third part of my estate, divided by appraisement as aforesaid, be sold, and the money arising from said sale, be equally divided betwixt my brothers and sisters, to-wit: Thomas Burch, Benjamin Burch, Maza Burch, John Burch, Cheadle Burch, Polly Johnston, Jenny Divine, Hannah C. Perkins, and Sarah Kesee, and is to them my said brothers and sisters, share and share alike, forever. But if either of said brothers or sisters should decease, leaving no child or children, then, and in that case, my will is, that their part of said legacy be equally divided between the whole of my brothers and sisters above named, and is to each of them forever."

This provision was preceded by dispositions to the effect that if the widow married, the testator "lent" one of the other two-thirds of his property to her, for her life, with remainder

to certain persons, (her relations,) and, one to Betty Cook, for her life.

And the provision was followed by certain dispositions intended to meet the case of the widow's not marrying, a case in which, what she was to have, was the whole of the property for her life.

Three of these dispositions were as follows: "One other share or third part of the moneys arising from the sale of the whole of my estate, I lend to my sister Betty Cook, during her natural life" etc.

"The other share, or the one-third part of the moneys so arising from the sale of my estate, I give and bequeath, to be equally divided betwixt the whole of my above named brothers and sisters, in manner as above mentioned, and is to each of them forever."

"At the death of my sister, Betty Cook, my will is, that the share or one-third part of the moneys arising from the sale of my estate so lent to her," "I give and bequeath to be equally divided betwixt the whole of my above named brothers and sisters, in manner above mentioned, and is to each of them forever."

Benjamin S. Burch was one of the brothers.

There were nine of the brothers and sisters.

The widow of the testator, never married. She took, therefore, an estate for her life, in the whole of the property.

She survived Betty Cook. The estate, therefore, which Betty Cook took in a third of the property, for her life, to commence at the death of the widow, came to nothing. And the only effect which Betty Cook's dying before the widow, had on the subsequent estates, was merely to accelerate the time at which their enjoyment was to commence. *Fearne Rem.* 237, 508; 1 *Jarm. Wills*, 513, 735.

What then, did the nine brothers and sisters, respectively take?

First, let us assume, that all of the nine survived the testator.

In that case, it is obvious that each of the nine took a re-mainder of some kind, in two-thirds of the property, to com-mence in possession at the death of the widow.  I say *each*, because the bequest is not to them as a class, but is to each by *name*, and even if it were to them as a class, the doctrine of survivorship among joint tenants, was not in force at the time when the bequest was made.  See ——— ——— at Atlanta, August, 1857.

Of what kind was this remainder? vested or contingent? for life or longer?

Vested, I say.

This was my opinion in *Burch et al. vs. Burch*, 19 *Ga. R.* 187, when this will was first brought before the Court; and in that case, I made the opinion the ground of a dissent.

I have not seen, or heard, any thing since, to make me change that opinion.  I will merely add to it, a reference to *Askew vs. Noland*, a case decided since the opinion was ex-pressed; viz: at Milledgeville, Nov. 1857; and to the cases that will be cited hereafter, in this opinion.

Assuming, then, that this remainder was vested, the next question is, was it an estate for life, or was it some greater estate, than one for life, as, what we may call a qualified fee?

It was greater than an estate for life, I say.

The first words used by the testator, in creating the es-tate, were these:  "And is to them, my said brothers and sis-ters, share and share alike, forever."   These words taken by themselves, it is plain, conveyed the *whole* estate *absolutely*.

But the testator used additional words.   Were these suffi-cient to cut down the estate conveyed by the others, to a life estate?

I think not, and I think that in this opinion I am support-ed by both principle and precedent.

First, it may be assumed as a leading principle of construc-tion, that words are counteracted by subsequent words, to the extent to which, the subsequent words are in conflict with them, and to that extent only.

The words here, as we have seen, are, " and is to them my said brothers and sisters, share and share alike, forever." The subsequent or additional words are, " but if either of my said brothers or sisters should decease, leaving no child or children, then and in that case, my will is, that their part of said legacy be equally divided, between the whole of my brothers and sisters above named, and is to each of them forever."

Now these words are in conflict with the former, in so far as the former make the estates which they convey, *absolute* estates; and in so far only. They, therefore, can, according to the rule of construction aforesaid, counteract the effect of those words so far as to cut down the estate, conveyed by those words, from *absolute* into *conditional* estates; and so far only.

And such conditional estates as these, correspond to leases or qualified fees, in land. We may, therefore, with sufficient accuracy for all practical purposes, say, that the absolute estates conveyed by the first words were reduced, by the added words, to *qualified fees.* That is, we may say, taking both sets of words together, that each brother and sister took a fee subject to be divested on his or her dying without leaving child or children, and vested in certain persons.

This, then, is the result at which we arrive, if we make this leading principle of construction, our guide.

If we make precedent our guide we shall, I think, arrive at the same result.

" In *Harrison vs. Foreman,* the testator gave to trustees £40 a year, part of £566 annuities, in trust to pay the dividends to Mrs. Barnes for life for her separate use; and after her death, upon trust to transfer the annuity, or the security upon which it was invested, to *Peter and Susannah,* equally; and in case of the death of either of them before *Mrs. Barnes,* he gave the whole to the *survivor living at her decease."* Both the legatees died during the life of *Mrs. Barnes.* The question was whether their legal personal representatives, or

the testator's residuary legatees, were entitled to the £40 annuities? And *Lord Alvanley*, M. R., determined in favor of the former, upon the principle that *Peter and Susannah* having taken vested interests in the fund at the death of the testator subject to be divested in favor of the *survivor* who might be living *at the decease* of the tenant for life; as there was no such survivor *at that period*, the divesting contingency never happened, and consequently the interest at first vested remained undisturbed, which entitled the two personal representatives to the property." 1 *Rop. Leg.* 414.

*Lord Alvanly* said, " where there are clear words of gift creating a vested interest, the Court will never permit the absolute gift to be defeated, unless it be perfectly *clear* that the *very case* has happened, in which it is declared that the interest shall not arise ; that it must be determined upon the *words of the will*, there was a vested interest, which was to be divested only upon a given contingency. And the single question was, whether the contingency had happened?" *Id. Ibid.*

The first words in this cited case are, " upon trust to transfer the annuity" "to *Peter and Susannah Stallard.*"

In the case in hand, the first words are, " to be equally divided between my brothers and sisters," " and is to them" "*forever.*"

If those words are sufficient to convey the fee, much more, it must be manifest, are these.

And in the case cited, the superadded or additional words, are, " and in case of the death of *either* of them before *Mrs. Barnes*, he gave the whole to the *survivor living at her decease.*"

In the case in hand, the superadded or additional words are, " but if either of said brothers or sisters should decease, leaving no child or children, then their part of said legacy be equally divided betwixt the whole of my brothers and sisters."

If the former words are insufficient to reduce the fee to

which they relate below a qualified fee; the latter words are, at least, equally insufficient to reduce the fee to which they relate, below a qualified fee.

To the same effect are many other cases. See *Smither vs. Willcock,* 9 *Ves.* 233; *Wall vs. Thompson,* 16 *Ves.* 413; *Browne vs. Lord Kenyon,* 3 *Madd.* 410; *Sturgess vs. Pearson,* 4 *do.* 411; *Keates vs. Burton,* 14 *Ves.* 434; *Maberly vs Strode,* 3 *Ves.* 450; *Bell vs. Phyn,* 7 *Ves.* 454, cited and commented on in 1 *Rop. Leg.* 412, *et seq.;* See too 1 *Jarm. on wills,* 750, 751, 500; *Weakly vs. Rugg,* 7 *D. & E.* 322; *Doe d. vs. Wetton,* 2 *Bos. and Pul.* 324.

I conclude then, that what the nine brothers and sisters took respectively was a qualified fee in two-thirds; viz: a fee subject, in the case of any one of the nine, to be divested, on his or her dying childless, and vested in certain persons.

I confess, that I once entertained a different opinion. When the case of Cheadle Burch's children—a case growing out of this will—was before this Court, I thought that the true import of the words which have been under consideration, was such, as to give to the brothers and sisters respectively but a life estate, and the remainder, to their respective child or children by *implication,* if they died leaving child or children. But in that case, the question what, or how much, the brothers and sisters, or their children, took, was very little, if at all discussed. In that case, the question made and debated, was, whether, as Cheadle Burch, (one of the brothers,) was dead when the will was written, the legacy to him was not void.

The executor's counsel insisted, that the legacy was void, and that, *therefore,* the *executor* was entitled to it, as undisposed of property. They, as far as I remember, did not deny, that if the legacy was *not void,* it went to Cheadle Burch's children. If it did not go to the executor, the counsel were indifferent to whom it went.

Again, according to the opinion which I now entertain, it

is the *heirs* of Cheadle Burch, to whom his share ought to go; though it may be true, perhaps, that it ought to go to them only through an administrator or executor of him; according to the opinion which I before entertained, it was his *children* to whom the share ought to go; but then, taking the facts as they appeared when I formed that opinion, his *children* were his *only heirs*, and there were no debts against his estate. I should, therefore, even if I had thought as I now think, have had to come to a conclusion, the same in practical effect as that to which I did come; viz: the conclusion, that the *children* were entitled to the share; but I should have had to put the conclusion on the ground that their father took the fee under the will and they were his *heirs*, and not on the ground on which I did put it—the ground that they themselves, took the fee under the will by *implication.*

I am now satisfied that the children did not take any thing by implication. And I have shown that they did not, if I have succeeded in showing, as I think I have, that every brother and sister of the testator, took an estate in fee, subject to be divested on his or her dying and leaving no child or children, and vested in certain persons. This must be manifest.

Assuming my present opinion to be true, then, the next question for me, is, who are those certain persons to whom the share of a brother or sister was to go over, on his or her dying childless?

The words, it will be remembered, are, that in that event, "their part of said legacy be equally divided between the whole of my brothers and sisters above named, and is to each of them forever."

Those certain persons then, are the "*whole*" of the *named* brothers and sisters—are "*each*" of the *named* brothers and sisters; not the *surviving* brother and sister.

This is the plain, the necessary, import of the words used.

And there is nothing absurd, or even surprising, in the fact, if fact it be, that such is the import. It was natural that

the testator should wish, that the wife or husband of any of his nine brothers and sisters, should participate to some extent, in the legacies given to such brothers or sisters, even although such brother or sister might die childless. Hence, it was natural, that he should wish, that even if any of the nine should die childless, as much as one-ninth of his or her legacy should nevertheless remain to each one, and the rest of the legacy, go in equal parts to the other eight.

My conclusion then, is, that the persons who were to take the share of any one of the nine brothers and sisters, on that one's dying childless, were those same nine brothers and sisters; and that they were, each, to take one-ninth of the share.

Supposing, that I am right in this, the next question is, what was the interest which each brother and sister thus took in the share of every other?

And it will be admitted by all, I dare say, that this interest was a *contingent* remainder. Every brother and sister took a remainder in the share of any brother and sister, *contingent* on that brother or sister's dying childless.

Was this such an interest as was *transmissible* to personal representatives?

I think it was.

" A contingent remainder of inheritance, is transmissible to the heirs of the person to whom it is limited, if such person chance to die before the contingency, except the existence of the devisee of the contingent interest at some particular time, may by implication enter and make part of the contingency itself, upon which such interest is intended to take effect." *Fearne Con. Rem. note (e.)*

This proposition is, I think, well supported by authority. See *Pinbury vs. Elkin*, 1 *Peere Wms.* 563; *Fearne Cont. Rem.* 509; 1 *Rop. Leg.* 401, *ch.* 10, *sec.* 4; *Note to* 2 *Wms' Saund.* 388, *k; Jarm. on Wills*, 777.

Assuming this proposition to be true, the remainder of any brother or sister, in any share, *was* transmissible to his or her

personal representatives; for the event on which such remainder was to vest in him or her was the death of the holder of such share, childless. This was the whole event. It made no part of the event that the brother or sister holding the remainder in the share, should be in existence at the time of the death of the holder of the share. Indeed, this very dead man, the holder of the share, himself, was to be one of the nine remainder-men in his own share.

This remainder which every brother and sister acquired, in the share of every brother and sister, was a remainder in fee. Therefore it was subject to distribution under the law, and not under the will. In other words the "accruing shares" to the brothers and sisters, made a part of *their* estates, when they died, and were not subject, like the original shares, to be divested on their dying childless. *Paine vs. Benson*, 3 *Atk.* 80; 2 *Jarm. Wills*, 620; 2 *Rop. Leg. ch.* 8, *sec.* 4, 336.

To sum up, let us suppose two-thirds of the estate divided into nine equal parts. Then, if I am right in what I have said, what the nine brothers and sisters took may be thus stated: each brother and sister took one of the shares in fee, subject to be divested on his or her dying childless, and vested in the whole of the nine brothers and sisters, whereby, the whole nine took each a contingent fee in that share—a fee contingent on the holder of that share dying childless; which contingent fee was transmissible to personal representatives, and subject to the statute of distributions.

To apply:

Seven of the brothers and sisters, including Benj. S. Burch, died leaving children. Their shares, therefore, were never divested from them. Each of the seven then was entitled absolutely to one share. But each being dead, his executor or administrator has become entitled to the share in his place.

This disposes of seven of the nine shares.

Two of the brothers and sisters, Sarah Kesee, and Jenny Divine, died childless.

Their fees then, in their respective shares, became divested and vested in the whole of the nine brothers and sisters, or their personal representatives, consequently their two shares would be subject to be divided into nine equal parts, of which parts each of them or their executors or administrators would retain one part and each of the other seven brothers and sisters, or their personal representatives, would receive one part.

These nine parts when thus retained, or received, would be retained or received *absolutely*, and therefore, would be subject to be disposed of under the statute of distributions, and not under the will.

This disposes of the remaining two of the nine shares.

It follows that the suit in the present case ought to have been brought by the executor or administrator of Benj. S. Burch, and not, as it was, by his children; and consequently, it follows that the demurrer should have been sustained.

Hitherto, I have been going upon the assumption, that all of the nine brothers and sisters *survived the testator.* But that assumption I was not authorized to make; two of the nine, Sarah Kesee, and Cheadle Burch, died before the will was written.

Does this fact affect the conclusion to which I have come?

This depends on whether the legacies to this brother and sister were *void* or not.

The question whether the legacy to the brother, Cheadle Burch, was void or not, has already been before this Court. That was *the* question in *Burch vs. Burch*, 20 *Ga. Rep.*, 835. And this Court held that the legacy was *not* void. But, it is true, that it was not without much difficulty, that the Court could come to that conclusion. Still, I must say, that I continue to acquiesce in the conclusion.

There can be no doubt, that it was in the *power* of this testator to prevent these two legacies from being void, if he wished to do so. The only question, therefore, that can exist, is, did he wish to do so?

Burch, ex'or, vs. Burch et al.

Arguing from the general scheme of disposition, exhibited in the will, we might say, I think, with much confidence, that it was not the intention of the testator, that what was included in these two legacies should pass from his kin to his wife, or to her kin. His great idea was, manifestly, to put his property in two parcels, one for his kin, the other for his wife and her kin. And the part of his property included in these two legacies he put in the parcel designed for his kin. And to hold the legacies void, would make an intestacy as to the property included in them, and so would cause that property to pass over to his wife's kin.

But perhaps, the state of the authorities does not justify us, in relying upon the *general* scheme of disposition, by itself, to establish an intention, that these two legacies were not to be void even though the legatees might be dead at the testator's death. See *Elliott vs. Davenport,* 1 *P. Wms.,* 83 *; Sibley vs. Cook,* 3 *Atk.* 572; *and Rop. Leg.* 320, *ch. 8, sec.* 4 *et seq.*

Is there any particular disposition coming in aid of the general scheme? I think so.

The testator, after directing a division among his brothers and sisters by name says: " But if either of said brothers or sisters should decease, leaving no child or children, then and in that case, my will is, that their part of said legacy shall be equally divided betwixt the whole of my brothers and sisters above named, and is to each of them forever."

The division is to be among the *whole* of the *named* brothers and sisters. The one dying leaving no children, i. e., the dead one, would be one of this "whole." Therefore, he was one who was to share in this division.

That the testator *knew* that he would be dead at the time of the division is beyond question, for the testator makes his dying childless, the event on which the division is to take place.

Here then, I think, is strong evidence to show, that the testator intended, that the death of any legatee at *any* time,

38

was not to affect the legacy given to him; but, that, in that case, his executor or administrator was to take his place.

And, I think, that the evidence derived from this source,. added to that derived from the general scheme of the will, is sufficient to show, that the testator's intention was, that legacies to a brother or sister were not to be void, although the brother or sister might be dead at the making of the will.

So, my general conclusion, as to the proper disposition to be made of the property in dispute, is not affected by the fact that two sisters were dead when the will was made.

The result is, that I think that the decision of the Court below, overruling the demurrer, was wrong.