Hudgens *et al. vs.* Wilkins *et al.*

---

## HUDGENS *et al. vs.* WILKINS *et al.*

The first item of a will was as follows: "I lend unto my beloved wife, Mary R. Wilkins, all the lands which I may die possessed of, lying in Elbert county, during her natural life, for her to support herself and my children which may remain with her on the land, and after the death of my wife, this land to be equally divided between all

my sons or their children; that is, if either of my sons should die before my wife does, leaving a child or children, then their child or children to draw their father's part of said land. This I give to my sons above, over and above their distributive shares of my estate, as hereafter bequeathed to them." In subsequent items, in distributing the general estate, the testator expressly excepted his lands in Elbert county, and in the third item he excepted "the land in Elbert county which I have willed to my sons in the first item of this will:"

*Held* that, under the first item of the will, the sons of the testator took a vested remainder, subject to be divested if any of his sons should die before his wife, leaving a child or children, in which event, such child or children should receive their father's part of the land.

(*a.*) This case differs from that of *Darnell vs. Barton et al. ex'rs*, 75 *Ga.* 377.

(*b.*) The key to the meaning of each will is the intention of the testator, and in cases of doubt, the law of this State favors the conclusion that remainders shall vest.

December 7, 1886.

Wills. Estates. Remainders. Construction. Before Judge LUMPKIN. Elbert Superior Court. March Term, 1886.

Hudgens, executor of Clement Wilkins, filed his bill, praying for construction of the first item of his testator's will and for direction as to division of his testator's estate under it. The will is sufficiently set out in the decision. At the time of his death, the testator had four sons living. One is still alive; another died before the life tenant, leaving two daughters; a third died childless during the life of the life tenant, leaving a widow; and the fourth died during the lifetime of the life tenant, leaving neither·widow nor children, but leaving a will. The testator left a daughter also, who claimed that the shares which the sons who died childless would have had should go to the heirs of the testator. The question was, whether the will created a vested or contingent remainder. The presiding judge held that it created the latter, and the widow and legatee of the deceased sons excepted.

W. M. & M. P. REESE; BARROW & THOMAS; J. N. WORLEY, for plaintiffs in error.

ALEX. S. ERWIN; P. W. DAVIS, by J. H. LUMPKIN; H. A. ROEBUCK; T. C. CARLTON, for defendants.

JACKSON, Chief Justice.

The sole question in this case is, whether the following clause of the will of Clement Wilkins, construed in the light of expressions in subsequent clauses, this being the first, conveyed a vested or a contingent remainder to his sons living at his death. The first clause is as follows:

"I lend unto my beloved wife, Mary R. Wilkins, all the lands which I may die possessed of in Elbert county, during her natural life, for her to support herself and my children which may remain with her on the land, and after the death of my wife, this land to be equally divided between all my sons or their children; that is, if either of my sons should die before my wife does, leaving a child or children, their child or children to draw their father's part of said land; this land I give to my sons above, over and above their distributive share of my estate as hereafter bequeathed to them."

The second item, in distributing the estate in general, expressly declares, "(except my land in Elbert county)," enclosed in brackets as above.

The third item that follows, in further direction and disposition of the property, "excepts," again in brackets, "the land in Elbert and special legacies," and subsequently in the third item the testator again encloses in brackets these words: "(except the land in Elbert county which I have willed to my sons in the first item of this will.)"

It is very clear, we think, that the sons living at his death were the objects of his bounty in respect to this land in Elbert. He gives it to them in the first item; he excepts it from the other property divided generally among his children in the second and third items; and in this third item, he not only excepts this land from the general division of other property, but repeats the bequest by

adding to the exception of the Elbert land the words, "which I have willed to my sons in the first item of this will," without any allusion to the preceding interest of the mother in that land, "for her to support herself and my children which may remain with her on the land," and which he says "I lend" for that purpose. When he speaks of the sons, who are to go into actual possession at the mother's death, he uses the words, "this land I give to my sons above, over and above their distributive share of my estate hereafter bequeathed to them," and in the third item, speaking of the same land, he says, "except the land in Elbert county which I have willed to my sons in the first item of this will."

The word "lend" is equivalent to "give" ordinarily in a will; but when used in the same clause of the will with the use also of the word "give" to other persons, stress may be put upon the difference between the two in the construction of the item, in order to ascertain the intention of the testator, which, after all, is the key to the construction. Code, §2456.

Construing the entire item, the mention of the children who may remain on it with the wife as the usees of the land with herself, the employment of the word "lend" as to her for these uses, and then "give" as to the sons among whom the division is to be made at the wife's death, with the reference to the land afterwards in his will as willed to his sons in that item, make a strong impression upon the mind seeking his intention, that the will of the testator was that the family, such of them as remained on the plantation, should be supported upon it until the widow's death with herself, and if none remained on it with herself, then the usufruct should be hers until her death, with the possession and right of possession in her till her death, and then that possession and the use and enjoyment of it should be his sons', share and share alike. What sons? Clearly, we think, those sons then in his mind's eye, to whom he said in the third item that he had

willed this land in the first item; that is, had already willed it. The title had gone out of him at his death into them, and had vested in them then, just as their shares of the general distribution went to them and vested in them at his death; for he says in the first item, "This land I give to my sons above, over and above their distributive share of my estate as hereafter bequeathed to them." They, these sons, then in his eye, then living, are to have the like title to this land, all of it, as they are to have to the distributive share of each by subsequent items, with only this difference, that they shall enter upon the enjoyment and use of their distributive shares *eo instanti* of testator's death, while for the use and enjoyment of all the Elbert county land they must wait until their mother has ceased to use and enjoy it with such children as remained on it with her at her death; that is, if left there alone, she is to use and enjoy it herself during her life, but if any of testator's children remain on it with her, they are to enjoy it with her.

But what is she to enjoy, either with or without children, on it? Only the usufruct—the rent, issues and profits of the land. Not an inch of the soil could she dispose of. It is not what remains of the land after she has sold off part for her use or that of the children; it is not such remainder as this of the land that these sons take at the expiration of her life; but it is a remainder in the entire *corpus*, none of which she could sell or destroy. In other words, they take a remainder in fee to the *corpus*, and the question is, whether this title in remainder is vested or contingent. The learned judge who tried the case below held, on the authority of *Darnell vs. Barton et al.*, decided at the October term, 1885, of this court (75 *Ga.* 377), that the remainder is contingent.

That case differs largely from this. The bequest there is of all "my property, both real and personal, or whatever kind it may be, to my beloved wife, Jane Barton, for and during her natural life, and after the death of my said

wife, I direct that all the remainder of my said property be sold by my executors and be equally divided among my children; and in the event that any of my children should die prior to the death of their said mother, leaving a child or children living, then I desire said child or children so left should stand in the place of its or their deceased parent, and heir a child's part; that is, the part that the deceased parent would have taken if living."

It was only what remained of personalty and realty of every sort of property that was to be sold and divided by the executors; it was only that left of the *corpus* that was then—at the death of the widow—undisposed of; it was only " all the remainder of my said property " that was to be sold and divided. Nothing may have remained The event of any remainder was uncertain. How much, if any, was uncertain. What the entirety left would be was uncertain; what each would get was thus equally uncertain. So that there was nothing to vest until the mother's death; nothing certain; not an item of property, and it could not vest until ascertained. To ascertain it the executors were to act; to sell it and divide it was devolved upon them, and it is inconceivable that the event of any remainder at all necessarily would happen. It is upon the uncertain contingency of such an event that any proceeds of any property would be subject to such sale and division by the executors.

It is very natural, therefore, that this contingency should be in the testator's mind when he specified who should have the title to that which would then be ascertained as subject to division; and hence he says in that case, *Darnell vs. Barton et al.*, that " in the event that any of my children should die prior to the death of their said mother, leaving a child or children living, then I desire such child or children so left should stand in the place of its or their deceased parent," etc. As much as to say, whatever is left of my estate being sold and the proceeds, then, at my wife's death, when only it can be ascertained so as to vest

Hudgens *et al.* *vs.* Wilkins *et al.*

title in anybody, are ready for division, I wish to go to my children's children in place of their dead parent, if the parent be dead and his child or children then living, making the contingency of the life of the child, when the proceeds are to be divided, that which produced the proceeds being then first ascertained, or the contingency of his having a child alive, then in case of his death to determine how that share of the proceeds should go. Until ascertained it could not vest in anybody; when ascertained so as to vest, it was then to vest in child or grandchild, as the case might be.

In the case at bar, the property is fixed; it is the Elbert land, it is given to the sons then alive; they are certain, the death of the mother certain; and there is nothing to cast doubt upon the vesting of the title, except the single provision that, should one of the sons die before the time of enjoyment of the estate in actual possession and leave a child, his child shall have his part of the land. Then his title that vested at the death of the testator is divested on his death before his mother's leaving a child, and becomes the child's; it being a vested remainder subject to be divested in the event of the happening of that event prior to his time to possess and enjoy his estate at the death of the life tenant.

The opinion in *Darnell's* case must be read in the light of that will. It may be that some expressions therein were calculated to mislead; but reference to the facts of that case, the terms of the will, and the distinctions alluded to above, it is believed, will make clear the distinction between the two cases. Certainly the contingencies arising on the uncertain happenings in that case leave no doubt of its correctness; and construing this will altogether, we think there is little doubt about the conclusion we reach here. If there be doubt, however, our statute itself favors the conclusion that remainders shall vest in such cases. Code, §2269.

The key to the meaning of each will is the intention of

v 77—36

the testator. Code, §2456. Four sons were living at the time he made it and when he died. He repeats his gift of the land to them. One-fourth of it he intended to give to each, if we hunt for his intention in his repeated anxiety about it, in his use of the word "give" when speaking of them, and of the word "lend" when speaking of the use of it by the widow, in this gift to them over and above the part each got in the general distributive clauses in the will. But one diminution of this absolute estate he makes in respect to the time of enjoyment and not of the vesting, and that is if he be dead at that time and his child be alive then, his vested remainder shall be divested and that child shall take in his place. That contingency did not arise, and the absolute estate that vested in each son at the death of the testator remained unchanged, and the heir or legatee of any that died before the mother will take his share.

For plaintiff in error, see cited, code, §§2265, 2248, 2269, 2456; 4 *Ga.* 377, 382, 461; 7 *Id.* 538, 546; 39 *Id.* 207; 54 *Id.* 602; 72 *Id.* 850, 853, 859; 75 *Id.* 458; 23 *Id.* 536, 557; 71 *Id.* 203–4; 41 *Id.* 554; 68 *Id.* 370; 3 Show. 398; 1 Bos. & Pull. 313; Wms. on Exrs. 1244–5, 1257-8-9, 1260, 1228; 2 Hare, 268; 3 *Id.* 86; Com. Dig., title Condition, 3 vol. p. 95; 3 Lev. 132; Bacon's Ab. title Condition; 21 *Ga.* 386; 30 *Id.* 642; 46 *Id* 251 1 Jarm. on Wills, 827, 871; Fearne on Rem. 215-6-7; 2; Minor's Ins. 338; 2 Wms. Ex. 1050–51, 1067; 2 Jarm. on Wills, 492, 493, 458; 4 Am. Dec., 249; 47 *Id.* 523; 48 *Id.* 593; 19 Wallace, 167; 62 Am. Dec. 312; 113 U. S. 344.

For defendant in error: Code, §2265; 23 *Ga.* 548; 75 *Id.* 377; Wigram on Wills, 140, 258; Hawkins Wills, 233; 2 Redfield Wills, 217, 221, 225, 253; 11 Pick. 503; 1 Iredell Eq. 55; 28 Ala. 494.

Judgment reversed.