JOHN P. VINSON and JESSE B. CARROLL, plaintiffs in error, *vs.* LEVIN J. H. VINSON, by his *prochein ami*, defendant in error.

1. A testator, by will, in five separate clauses, gives certain property to "the heirs in law" of one of his sons, and makes that son trustee of the property so bequeathed. The son had one son living at the date of the will and death of the testator: *Held*, First, that the son took no beneficial interest in the estate; Second, that the son held the property *in trust* for all who might answer the description of his heirs in law at the time of his death, then to be distributed; in the meantime the whole usufruct to be enjoyed by those *in esse*, subject to be diminished *pro tanto* as others might come into being.

Bill in equity, in Twiggs Superior Court, and decision by Judge O. A. LOCHRANE, at Chambers, on the 16th June, 1862.

James Vinson died testate, in the county of Twiggs, in the year 1848, and his will was duly proved and recorded, and letters testamentary issued to the executors nominated in the will, to-wit: Benjamin F. Vinson and Joseph Blackshear. By the will the testator gave to his wife fifty acres of land and certain household furniture, negro man and woman, a horse, and some hogs and cattle, during her lifetime or widowhood, and at her death to be divided equally, as the rest of his property, except the fifty acres of land, which he directed should be divided, at the death of his wife, between Joseph S. Vinson and the heirs-in-law of John P. Vinson.

"ITEM 4. I further will and devise the balance of my land be equally divided between Joseph S. Vinson and the heirs-in-law of John P. Vinson."

"ITEM 5. It is my will and desire that the residue of my

property, consisting of negroes, horses, hogs and cattle, and everything I may possess at the time of my death, not heretofore willed off, be equally divided between Mary Blackshear, Joseph S. Vinson, Benjamin F. Vinson, and the heirs-in-law of John P. Vinson. *Provided*, if Joseph S. Vinson should depart this life without coming in possession of his distributive share, then it is my will and desire that his distributive share be equally divided between Mary Blackshear, Benjamin F. Vinson, and the heirs-in-law of John P. Vinson, except the land, then it is my will and desire that the land go to the heirs-in-law of John P. Vinson."

"Item 6. It is also my will and desire that if Joseph S. Vinson should depart this life without being possessed of his portion, as above mentioned, that his wife, Jane Vinson, be allowed the sum of five dollars out of my estate, and be forever barred from anything more."

"Item 7. I appoint John P. Vinson trustee for the property herein bequeathed to the heirs of John P. Vinson."

Upon a division of the estate of testator, John P. Vinson received six negroes, and some time thereafter sold two of the negroes to one Jesse B. Carroll, of the county of Wilkinson. John P. Vinson was wholly insolvent.

Levin J. H. Vinson, a minor son of John P. Vinson, by his next friend, Joel J. Denson, filed his bill in equity against John P. Vinson and Jesse B. Carroll, in which the foregoing facts are set forth and charged, and in which it is also alleged that complainant was the only heir-at-law of John P. Vinson at the time of testator's death, the said John P. Vinson having no wife or other child living at that time.

The bill prays, amongst other things, that John P. Vinson and Jesse B. Carroll may be decreed to account to complainant for the value and hire of the two negroes sold to Carroll, as hereinbefore stated.

The defendants set up amongst other things a plea to the bill, alleging:

1st. That complainant had, and has a living sister, named Laura Vinson, who is equally entitled, under said will, with the complainant, and should be a party to any litigation or

decree touching the property which forms the subject matter of controversy.

2d. That the legatees, whoever they may be, are not entitled, under said will, to the possession of said property until and after the death of their father, John P. Vinson, who is still in life.

At the hearing Judge Lochrane overruled this plea, and the case is brought before this Court upon an assignment of error on that decision.

BAILEY & DEGRAFFENREID, for plaintiffs in error.

NISBETS, for defendant in error.

*By the Court.*—LUMPKIN, C. J., delivering the opinion.

It is difficult to ascertain with certainty the meaning of this will, and we need no other proof of the confusion of tongues of Babel than the language in which this will is written. Once the earth spake in holy tongue given to our progenitors at the creation. But *pro peccato dissentiones humanæ*— different speech came into the world. Hence, the many disagreements among men. The punishment at Babel is like Adam's corruption, hereditary to us, and we never came under this rod, in the construction of a will, but we smart for our ancestors' rebellion at Babel.

As a general rule, the readiest and plainest style is the most forcible, and in all ordinary cases the word which first presents itself is the best, as in all matters of right and wrong, the first feeling is that which the heart owns and the conscience satisfies—so when a testament is offered for construction the first impression will generally be found in accordance with the intention of the testator. Then we have only to ascertain whether there be any rules of law or technical language which contravene this exposition. If not, let the purpose of the testator be carried out, otherwise you substitute your own will for that of the testator.

In the will before us, the testator repeats five lines in precisely the same words, that he gives the property in dispute

to "the heirs in law of his son John P. Vinson." He gives his son, John P., no part of his estate, but appoints him "trustee for the property therein bequeathed to his heirs." John P. Vinson had but one child living at the time the will was written—the complainant in the bill. He has since had another child, Laura Vinson. What then is the plain, obvious and common-sense meaning of the testator? That John P. Vinson, as argued by counsel for the defendant, took a life estate in this property, with remainder to his child or children—born and to be born? Not so. John P. Vinson, who it is alleged in the bill was insolvent, which is one of the keys to the testament, took no personal or beneficial interest in the property. None was left to him directly. He took none by implication. It was given to him in trust for somebody. And the question is, who were the *cestui que trusts?* It is contended for the complainant that it was the son, living at the date of the will and death of the testator, and he only. We cannot think so. Nature as well as the express words of the will oppose this construction. Why should the father of John P. Vinson be supposed to have such an exclusive affection for this particular grand-child any more than any other which might be begotten by his son, and thus make him the sole beneficiency of his bounty?

Besides it is at variance with the words of the will. By giving the property to the "heirs-in-law of John P. Vinson," it shows that the testator looked to the death of his son as fixing the period when the legatees should be ascertained. Why not give the property to John P. Vinson, in trust for Levin J. H. Vinson, the complainant? How easy was it in this way to have saved all doubt or difficulty. He did not intend it.

And now we would inquire, if there be any rule of law or technical language used which contravenes this construction? If so, we have searched in vain for them in Fearne, on Contingent Remainders and Executory Decrees, and all the other authorities which would likely cast any light upon the investigation.

Our judgment, therefore is, that an estate *in trust* was

Vinson and Carroll *vs.* Vinson.

given to John P. Vinson, which of itself negatives the idea that any other estate was given him for the use of his heirs-in-law, to be ascertained at his death for the purposes of distribution, and that such of them as *in esse* are entitled to the whole usufruct, to be diminished *pro tanto* upon the coming into being of any hereafter who may answer that description, it not being the intention of the testator that the property should accumulate in the hands of the trustee during his lifetime, but be subject to present enjoyment by said heirs.    Consequently we hold that the first plea of the defendant was good, and that Laura Vinson should have been made a party to the litigation.

Let the judgment be reversed.