THE CITY COUNCIL OF AUGUSTA *vs*. RADCLIFFE *et al.*

[CRAWFORD, Justice, being related to the defendants in error, did not sit in this case· Judge Simmons, of the Macon circuit, was designated by the governor to preside in his place.]

1. Where the Georgia Railroad and Banking Company sold to John D. Ramey certain real estate in trust for Mrs. Ann L. Finn for life, with remainder to such child or children as she might have *in esse* at her death, and in default of children to grandchildren living at the time of her death, with power to said trustee to sell and reinvest with the consent and approbation of the person or persons for whose use he may, at any time, hold said property ; and the trustee sold with the consent of the life tenant only, a usee in remainder being in life at the date of the sale, and Mrs. Finn survived all of her children, and died in 1876, leaving grandchildren :
*Held*, that the sale by the trustee only conveyed the life estate of Mrs. Finn, and did not divest the title of the granchildren : 

2. *Held*, further, that the statute of limitations did not commence to run against the grandchildren until the death of Mrs. Finn, the life tenant.

Tenants. Estates. Remainder. Statute of limitations. Before Judge POTTLE. Richmond Superior Court. October Adjourned Term, 1880.

Reported in the decision.

J. S. & W. T. DAVIDSON ; M. P. CARROLL ; JACKSON & LUMPKIN, for plaintiff in error.

BARNES & CUMMING; WILLIS A. HAWKINS; HARRI-
SON & PEEPLES, for defendants.

SIMMONS, Judge.

This was an action of ejectment brought in the statu-
tory form by James Radcliffe *et al.* against the city
council of Augusta for a certain lot in said city.

By agreement of the parties the case, was submitted to
the Hon. E. H. Pottle, Judge of the superior courts of
the Northern Circuit, who was to pass upon both the law
and facts of said case. The trial was had before him at
the October adjourned term of Richmond superior court,.
and he rendered a judgment for the plaintiffs in said
action for the lot of land sued for, to which judgment the
defendant excepted and assigned the same as error, and
it is now before us on a writ of error for review.

It appears from the record in said case that in the year
1847 John P. King, as president of the Georgia Railroad
and Banking Company, sold to John D. Ramey the prem-
ises in dispute "in trust forever, for the sole and separate
use of the said Ann L. Finn, wife of John Finn, during
her coverture, and if she survives the said John Finn,.
during her widowhood or natural life, and at her death,
or the termination of her widowhood by marriage, which-
ever shall first happen, the premises hereby conveyed
shall go to and vest in the child .or children of the said
John and Ann L. Finn then in life; and in case of the
death of any such child during the life or widowhood of
the said Ann L., leaving issue alive, such issue shall take
in place of such child; and in case any such child or issue
of a child so entitled to said property be female, said
John D. Ramey shall hold the part or portion of such
child or issue of a child, or both, as the case may be, in
trust for her or their sole and separate use, not liable to
the control or disposal of, nor for the debts of, any hus-
band of such child or issue of a child.

And upon this further trust that the said John D. Ramey may, by and with the consent and approbation of the person or persons for whose use he may, at any time, hold said property, without the order or decree of any court, sell and dispose of said property and re-invest the proceeds of such sale in other property, real or personal, upon the trust hereinbefore declared and no other."

In the year 1857 Ramey, the trustee, with the consent and approbation of Mrs. Finn, sold and conveyed a part of this lot to the defendant, the city council of Augusta, and the part so conveyed is the premises in dispute.

Mrs. Finn had but one child during her coverture with John Finn, Mary E. Finn, who intermarried with Willis A. Hawkins in 1854, she being then in the twenty-second year of her age. She died in 1867, leaving surviving her six minor children. The eldest, Mary, intermarried with James Radcliffe, and she and the others were the plaintiffs in the action below. Mrs. Radcliffe died after the suit was brought, leaving her husband and an infant son, who were made parties in her place.

Mrs. Finn survived her husband, and died a widow in June, 1876, leaving said grandchildren, all of whom were minors at her death, except Mrs. Radcliffe, who was then twenty-three years old.

In 1858 Ramey, the trustee, resigned and Musgrove was appointed in his place. Mrs. Hawkins and her husband and Mrs. Finn united in the petition to the court asking the acceptance of Ramey's resignation and the appointment of Musgrove.

In this petition was recited the purchase of this property from the Georgia Railroad, and the sale of this property to the city of Augusta.

Afterwards, in 1860, a similar petition was made by the same parties to the court to accept the resignation of Musgrove and the appointment of Mrs. Finn as trustee in his place.

In this petition the same recitals as to the deeds, trusts and sales were made as in the first petition.

Upon this state of facts, the court below rendered judgment for the plaintiffs for the premises in dispute. The defendant excepted and assigned the same as error. The question before us is, was that judgment right? Was it authorized by law under the evidence in the case?

1. In order to determine the question we must first ascertain what estate passed from the grantor under this deed to Mrs. Finn, and second, what was the kind of remainder created in said deed? The property is given by the deed to Mrs. Finn for her sole and separate use, for and during her natural life or widowhood. An estate for life or widowhood is a life estate. This, then, was a life estate in Mrs. Finn. What kind of remainder was created in said estate at the termination of her life estate? Was it a vested or contingent remainder? The deed provides that, " at the death or marriage of Mrs. Finn, the property shall go to and vest in the child or children of the said John and Ann L. then in life, and in case of the death of such child during the life or widowhood of Mrs. Finn, leaving issue alive, such issue shall take in place of such child." This does not constitute a vested remainder, because in a " vested remainder there is some person *in esse*, known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate upon the expiration of the existing particular estate, and whose right to such remainder no contingency can defeat." 2 Washburn on Real Property, 502, 3d Ed.; Code, §2265. In the case under consideration the person who was to take this remainder was not known and ascertained. It was to go to and vest in Mrs. Hawkins, the only child of Mrs. Finn, in the event she survived her mother, the life tenant. If she died before her mother (which she did do), then it was to go to her child or children. The time when the remainder was to vest was certain, to-wit, upon the death of Mrs. Finn; but the person who was to take at that time was uncertain. Mrs. Hawkins' right to take depended upon her surviving her mother. If she died

first, it still depended upon her leaving issue alive. It is clear, therefore, that the person who was to take, after the termination of the life estate, was uncertain, unknown and unascertained.

A contingent remainder is one limited to an uncertain person, or upon an event which may or may not happen. Code, §2265 ; 2 Washburn on Real Property ; Williams on Real Property ; 2d Minors' Institutes ; *Griswold vs. Greer*, 18 *Ga.*, 545. We think, therefore, it is clear that Mrs. Finn had a life estate only, and that the remainder over was contingent. These propositions being true, it follows that the fee was not in the trustee, nor in the contingent remaindermen. It could not be in the latter, because it was not known at the time of the grant who he was or who he would be at the termination of the life estate. There was no present interest passing to the remaindermen under the deed. Their interest had neither legal nor equitable entity until Mrs. Finn's death. No estate, legal or equitable, passed to these remaindermen until her death. " A contingent remainder is no estate, it is only a chance of having one." Williams, 258 ; Washburn, 590. It may be asked if the fee was neither in the trustee nor in the remaindermen, where was it? This was a subject of controversy a long time in the courts and among lawyers. Nor has it yet been entirely settled.

" The ancient doctrine that the remainder must vest at once or not at all had been broken in upon by the introduction of contingent remainders, but the judges could not make up their minds also to infringe on the corresponding rule, that the fee simple must, on every feoffment which confers an estate in fee, at once depart out of the feoffor.

They, therefore, sagely reconciled the rule which they left standing, to the contingent remainders which they had determined to introduce, by affirming that during the contingency the inheritance was either in abeyance or *in*

*gremio legis* or else *in nubibus*. Modern lawyers, however, venture to assert that what the grantor had not disposed of must remain in him and cannot pass from him until there exists some grantee to receive it. And when the gift is by way of use under the statute of uses, there is no doubt that until the contingency occurs, the use, and with it the inheritance, result to the grantor." Williams on Real Property, 221.

The remainder being contingent, the fee was either in abeyance or in the grantor, and could not be in the trustee. This being so, he could not convey that which he did not possess. The only thing he could sell was the life estate of Mrs. Finn. That, perhaps, he had the right to sell, with the consent of the life tenant. She could have disposed of her interest herself. His effort to dispose of the fee was a failure, and his act was void.

His trust might have been and was executory, so that on the happening of the contingency he could, as trustee, do what was then necessary to be done, in turning over the estate to the remaindermen. He was a trustee to preserve the contingent remainder.

And this brings us to the consideration of the next point in the case, the execution of the power given to the trustee in the deed. The deed gives him power to sell the property by and with the consent and approbation of the person or persons for whose use he may, at any time, hold said property, without the order of any court, and re-invest the proceeds in other property.

If we are correct in our views in regard to the character of the estate which passed to the trustee under the deed, it is evident that he did not strictly comply with the power given him.

" The law is exceedingly strict in requiring a precise compliance with the direction of the donor, as expressed in the deed." 2 Washburn, 608.

The phraseology of this power is peculiar. Deeds of this sort usually give the trustee power to sell by and

with the consent of the life tenant. This deed does not do that. If it had been the intention of the grantor for the trustee to sell only with the consent of Mrs. Finn, how much easier and simpler it would have been for him to so have expressed it. But instead of that he empowers him to sell with the consent and approval of the person or persons for whose use he may at any time hold.

It was argued before us that, as the trustee was only holding for the use of Mrs. Finn at the time of the sale to the city of Augusta, that the sale was legal and passed the title. This view is, perhaps, correct, as we have shown, so far as the interest of Mrs. Finn is concerned. We think, however, that we have shown that the trustee could sell no greater interest than she had. The city purchased that interest and used and enjoyed it from that time to the present. She was the only one who did approve the sale, and she alone was bound. We are therefore of the opinion that the trustee did not strictly comply with his power of sale. That the sale he did make only conveyed the interest of the life tenant, and that the plaintiffs below had a right to recover.

2. For the reasons above given we are of the opinion also that they were not barred by the statute of limitations or prescription. The life tenant did not die until 1876, and this suit was commenced in 1878. They could not have commenced their action until the death of the life tenant. Upon her death they, for the first time, had the title and the right of entry or possession, and they must have both of these before the statute begins to run against them. For the same reasons the statute did not run in favor of the city, and her color of title ripen, by prescription, into a perfect title. And for the additional reason that the city was charged with notice by the recitals in her deed that she only took the estate or interest of the life tenant.

It is also claimed by plaintiff in error that the defendants in error were estopped by the act of Mrs. Hawkins

in joining in the application for a change in trustees and the recitals made in said application. The reply to this position is that her children, plaintiffs below, do not claim through her, but claim as purchasers under the deed, not as heirs of Mrs. Hawkins. There was no privity in estate between Mrs. Hawkins and her children, and they could not be estopped by anything she did or said. " A privy in estate is a successor to the same estate, not to a different estate in the same property." *Pool vs. Morris,* 29 *Ga.,* 374.

One of the grounds of error assigned is that the judge failed to pass upon the equitable plea filed in the court below. We find no evidence in the record to sustain said plea. It is true that there is evidence showing that Mrs. Finn received the interest on the three thousand dollars of bonds which the trustee received for this land from the city in payment for this lot.

But we can find no evidence going to show that these plaintiffs ever received a dollar of the principal or interest of said bonds. The plea, of course, could not affect them unless they had received the bonds or the proceeds thereof.

For these reasons we think the judgment of the court below was right, and we therefore affirm it.

A motion to dismiss the writ of error was made in this case, but as there are some doubts in some of our minds in regard to that motion, and as the judgment affirming the judgment below has precisely the same practical effect as the dismissal of the writ of error would have had, we do not deem it necessary to pass upon that motion.

Judgment affirmed.