LUMPKIN *et al. v.* PATTERSON *et al.*

Nos. 7101, 7102.   FEBRUARY 20, 1930.   REHEARING DENIED MARCH 1, 1930.

*Slade & Swift* and *H. B. Pease,* for Lumpkin et al.

*W. H. Burt, Bennet & Peacock, Worsley & Flournoy,* and *Neill & McGee,* contra.

HILL, J. (After stating the foregoing facts.) We are called upon in this case to review the judgment of the trial court construing the will of Louis F. Garrard Sr., a distinguished lawyer and member of the bar of this court in his lifetime. The will in its entirety is set out in the foregoing statement, inasmuch as it is insisted that in order to construe it properly we should consider everything within its "four corners." This we have done. The case has been argued with great ability by learned counsel for all parties at interest, and the briefs have been prepared with evident painstaking care and after diligent research and analysis of the authorities cited. The writer has spent much time in studying the record and authorities bearing upon the question at issue, and has reached the conclusion that the able trial judge properly decided the case on all the points raised. The trial judge's decision is set out in the foregoing statement. Item 4 of the will provides: "Should I survive my wife, in that event I give, bequeath, and devise all of my property, of whatsoever kind and character, real and personal, to my children, share and share alike, subject to the deduction and provision made for minor children hereinafter expressed in item fifth of this will." Item 6 provides: "Out of the share of my estate going to each one of my daughters, at the time mentioned for final distribution of my estate in the third and fourth items of this will, I direct that the sum of twenty-five hundred dollars ($2500) of each of said daughters' shares be invested in a house and lot, the title to which said house and lot shall be taken in the name of said daughter for and during her natural life, and at her death to her legal heirs. I have directed this investment to be made to insure, as far as human foresight can, a home for each one of my daughters. I do not mean to limit the amount to be invested in said home to be the sum of $2500 as a maximum sum. Either or all of my said daughters shall have the right to direct an additional amount out of her share to be added to the sum of $2500, but the title to said property must in any event be taken as in this item directed. After the investment has been made of a portion of the share of each of my said daughters, as provided for in the foregoing part of this the sixth item of my

will, I desire and direct that the remaining portion of the shares of each of said daughters shall be invested in property, either registered bonds or real estate, the title of which said property shall be taken in the name of said daughter for and during her natural life, and at her death to her legal heirs. When those investments have been made, the possession and use of said property is to be turned over to each of said daughters, and all of the income, rents, and profits arising out of the same shall be used and enjoyed by said daughters, with no other restrictions, except that they shall in no wise create any incumbrance or lien on their life-estate in the same." It will be observed that the testator was very solicitous about securing the shares devised and bequeathed to his wife and daughters, in order that they might have a home and support during their natural lives, and twice in item 6 he declares that at the daughter's death the property shall go "to her legal heirs."

While testator showed a fatherly anxiety "to insure, as far as human foresight can, a home for each of his daughters," the construction we give the will also provides for his grandchildren, if any, and the fact that he used the word "children" twenty-four times, as contended, in referring to his children, shows that he was trying to provide for his blood-kin. But upon failure of grandchildren, testator's intention no doubt was that on failure of any daughter to have children at her death such share should go "to the heirs at law" of testator, as held by the trial judge. When the will was written in the year 1900, what is now section 3660 was in the Code then of force, and was the law of the land at that time; and we are bound to assume that the testator, being a skilled lawyer, knew that the words "legal heirs" were of similar import to "lawful heirs," as contained in section 3660 and that those words meant "children." Testator had put a limitation upon his property as far as the law permits; and when he devised the property to his daughters for life, and at their death to their "legal heirs," or "children," he must have known the effect of the use of such language. At any rate, he was bound to know the legal meaning of such language, because it was the law of force at the time the will was written. The foregoing construction is in harmony with the testator's intention. So we are called upon to determine what the words, "to her legal heirs," mean in the will under construction. The following sections of the Civil Code of 1910, have been frequently construed by this court:

"§ 3659. The word 'heirs,' or its equivalent, is not necessary to create an absolute estate; but every conveyance, properly executed, shall be construed to convey the fee, unless a less estate is mentioned and limited in such conveyance. If a less estate is expressly limited, the courts shall not, by construction, increase such estate into a fee, but, disregarding all technical rules, shall give effect to the intention of the maker of the instrument, as far as the same is lawful, if the same can be gathered from its contents; and if not, in such case the court may hear parol evidence to prove the intention.

"§ 3660. Limitations over to 'heirs,' 'heirs of the body,' 'lineal heirs,' 'lawful heirs,' 'issue,' or words of similar import, shall be held to mean 'children,' whether the parents be alive or dead; and under such words, children and the descendants of deceased children, by representation, in being at the time of the vesting of the estate, shall take.

"§ 3661. Estates tail are prohibited and abolished in this State. Gifts or grants to one, and the heirs of his body, or his heirs male or heirs female, or his heirs by a particular person, or his children or his issue, convey an absolute fee. Estates tail being illegal, the law will never presume or imply such an estate. Limitations which, by the English rules of construction, would create an estate tail by implication in this State shall give a life-estate to the first taker, with remainder over in fee to his children and their descendants, as above provided; and if none are living at the time of his death, remainder over in fee to the beneficiaries intended by the maker of the instrument.

"§ 3662. All limitations over after the death of the first taker, upon his dying without heirs, or dying without issue, or dying without leaving heirs or issue, or on failure of issue, or other and equivalent terms, shall be construed to mean a failure of heirs or issue at the time of the death of the first taker, and shall convey the estate in the manner prescribed in the preceding section."

As we view this case, § 3660 stands out independent of §§ 3661 and 3662. It is true § 3661 refers to § 3660 by use of the words "as above provided," but merely to identify children and their descendants as the takers of remainder interests in case of an estate tail by implication. A case very similar in its facts to the present is that of *Milner* v. *Gay*, 145 *Ga.* 858 (90 S. E. 65), where this court held:

"A deed to A 'for and during his natural life, and at his death to be equally divided between the heirs at law of' A, creates a life-estate in A, with remainder to his children; the remainder estate is vested in the children in esse at the time of the execution of the deed, subject to be reopened to let in afterborn children. Upon the death of a child in esse when the deed was executed, before the death of the life-tenant, leaving a husband and a child, the latter also dying before the life-tenant's death, the husband succeeded by inheritance to the share of the deceased remainderman." In delivering the opinion of the court, Mr. Justice Evans said: "We will consider first the deed of 1884. The granting clause is to 'John C. Gay as trustee for his legal heirs,' and the tenendum clause is 'to have and to hold the said bargained premises unto the said John C. Gay, trustee as aforesaid, and his legal heirs.' When the deed was executed John C. Gay had two living children, Mattie and Myrtle. Other children were subsequently born to him. Both the granting and tenendum clauses excluded John C. Gay from taking an interest in the land other than as trustee 'for his legal heirs.' The deed reflects no intention on the part of the grantor to keep the estate in nubibus till his son's death. He must have used the words 'legal heirs' in the sense of children, and under the familiar rules of construction only such children as were in life at the time the deed was made took thereunder. *Turner* v. *Barber,* 131 *Ga.* 444 (62 S. E. 587) ; *Tharp* v. *Yarbrough,* 79 *Ga.* 382 (4 S. E. 915, 11 Am. St. R. 439) ; *Plant* v. *Plant,* 122 *Ga.* 763 (50 S. E. 961) ; *Hollis* v. *Lawton,* 107 *Ga.* 102 (32 S. E. 846, 73 Am. St. R. 114). The case of *Vinson* v. *Vinson,* 33 *Ga.* 454, was cited as authority for holding that the present beneficiaries of the trust are the heirs apparent of John C. Gay at his death. The estate in that case was created by a will, in devises so confused that the learned Justice who wrote the decision compared its language to the confusion of tongues of Babel. The ruling of that case stands on its own special facts, and does not conflict with our present holding. Applying this construction to the facts of the case, the trustee took the estate in trust for his two daughters in life at the time, viz., Mattie and Myrtle. Upon the death of Myrtle her half interest passed by inheritance to her husband and child, and upon the death of the child the husband became entitled to her half interest in the land.

"In the deed executed in 1891 the estate granted is 'to John C. Gay for and during his natural life, and at his death to be equally divided between the heirs at law of John C. Gay.' Before the code a devise to A for life and at his death to his heirs, lawful heirs, or words of similar import, gave the fee to A. *Wilkerson* v. *Clark,* 80 *Ga.* 367 (7 S. E. 319, 12 Am. St. R. 258). But the code declares: 'Limitations over to heirs, heirs of the body, lineal heirs, lawful heirs, issue, or words of similar import, shall be held to mean children, whether the parents be dead or alive; and under such words children and the descendants of deceased children, by representation, in being at the time of the vesting of the estate, shall take.' Civil Code (1910), § 3660. Under this section the deed under consideration created a life-estate in John C. Gay, with remainder over to his children. When the deed was made John C. Gay had three children, Myrtle, Mattie, and Heyward. Subsequently four more children were born unto him. The grant in remainder was to the children of John C. Gay as a class; and the rule is that where there is a grant of a remainder to children as a class, children in esse at the time of the execution of the deed take a vested remainder, which opens for the purpose of letting in afterborn children. The rule is the same in the case of deeds and wills. *Olmstead* v. *Dunn,* 72 *Ga.* 850; *Burnett* v. *Summerlin,* 110 *Ga.* 349 (35 S. E. 655); *Crawley* v. *Kendrick,* 122 *Ga.* 183 (50 S. E. 41, 2 Ann. Cas. 643); *Cooper* v. *Mitchell Inv. Co.,* 133 *Ga.* 769 (66 S. E. 1090, 29 L. R. A. (N. S.) 291); Wager *v.* Wager, 1 Serg. & R. 373; Waddell *v.* Waddell, 99 Mo. 338 (12 S. W. 349, 17 Am. St. R. 575); Moore *v.* Weaver, 82 Mass. 304; 2 Washb. Real Prop. § 1545. The code section just cited introduces children of deceased children into the class, and the effect of this section upon the general rule is to enlarge the class of remaindermen when designated as heirs, lawful heirs, or the like, so as to include children of deceased children. Both daughters, Myrtle and Mattie, died before the death of the life-tenant. The former intermarried with Foster Wise, and died leaving an infant, who died before the death of the life-tenant, leaving Foster Wise, the father, as the sole heir at law; and he conveyed his interest thus acquired to Milner. Inasmuch as the daughter Myrtle took a vested remainder, subject only to be reduced in quantity of estate by the birth of afterborn children, and her infant child having predeceased

the life-tenant, her husband succeeded to that interest by inheritance. The daughter Mattie intermarried with L. J. Cook, and died leaving a child, who took by representation the interest of his mother. So that the land is to be divided into seven shares, one share to Milner, the grantee of Foster Wise, one share to the child of Mattie Gay Cook, one share to J. H. Gay, and one share each to the children of the second marriage, who were born subsequently to the execution of the deed, and who survived the life-tenant."

The ruling in *Milner* v. *Gay* was by five Justices, and is therefore not binding on the court; but in our opinion it is directly in point, and was well considered. But it is contended by learned counsel for plaintiffs in error, that the ruling in *Milner* v. *Gay* is in conflict with the decisions in *Sharman* v. *Jackson*, 30 *Ga.* 224, *Herring* v. *Rogers*, 30 *Ga.* 615, and *Ford* v. *Cook*, 73 *Ga.* 215 (1) ; and the true intent and meaning of §§ 3659, 3660, 3661, 3662, supra, and should yield to the older cases and the code sections; and they accordingly request this court to review and overrule headnote 2 in the case of *Milner* v. *Gay*. We have examined all the above-cited cases, and we decline the request to overrule *Milner* v. *Gay*. We are of the opinion that the older cases are distinguishable from that case and from the present case. The *Milner* case has been cited approvingly by this court on the doctrine of a remainder opening to take in afterborn children, in *Overby* v. *Scarborough*, 145 *Ga.* 875, 880 (90 S. E. 67) ; *Gibbons* v. *International Harvester Co.*, 146 *Ga.* 467 (91 S. E. 482). In *Stanley* v. *Reeves*, 149 *Ga.* 151, 155 (99 S. E. 376), *Milner* v. *Gay* was cited approvingly on the proposition that the words "heirs of the body," or words of similar import, shall be held to mean "children," whether the parent be "alive or dead." In *Powell* v. *McKinney*, 151 *Ga.* 803, 809 (108 S. E. 231), and *Toucher* v. *Hawkins*, 158 *Ga.* 482, 487 (123 S. E. 618), the *Milner* case was cited approvingly on the proposition that in a devise to a class "the members of the class are to be ascertained upon the death of the testator, as the will takes effect on that date. . . And the interest of any who might die before the period of distribution passed to their heirs." In *Harris* v. *McDonald*, 152 *Ga.* 18, 26 (108 S. E. 448), the case of *Milner* v. *Gay*, was distinguished from cases where it is held that instruments convey contingent remainders, as where the will or other instrument contains such language as "for her use during her natural life,

and at her death to her children should she leave any; and if she should leave no children or descendants of a child or children, then to [testator's brother, naming him], should he be in life, or, if he is dead, then to his children him surviving, share and share alike."

But it is argued by learned counsel for plaintiffs in error in the main bill of exceptions that this court has held that "a grant or devise to A for life, and at A's death to persons of a class then living, the descendants of a deceased member of the class to take their parents' share, is a contingent remainder," and the following decisions of this court are cited to sustain their contention: *Sharman* v. *Jackson*, 30 *Ga.* 224; *Taylor* v. *Meador*, 66 *Ga.* 230; *City Council of Augusta* v. *Radcliffe*, 66 *Ga.* 469; *White* v. *Rowland*, 67 *Ga.* 546 (44 Am. R. 731); *Darnell* v. *Barton*, 75 *Ga.* 377; *Cushman* v. *Coleman*, 92 *Ga.* 772 (19 S. E. 46); *Smith* v. *Smith*, 130 *Ga.* 532 (61 S. E. 114, 124 Am. St. R. 177); *Lane* v. *Patterson*, 138 *Ga.* 710 (76 S. E. 47); *Murphy* v. *Murphy*, 151 *Ga.* 438 (107 S. E. 37); *Harris* v. *McDonald*, 152 *Ga.* 18 (108 S. E. 448); *Burton* v. *Patton*, 162 *Ga.* 610 (134 S. E. 603); *Dismukes* v. *Bagley*, 165 *Ga.* 665 (141 S. E. 902). It is insisted that those decisions demonstrate that if the language used in the will, when properly construed, had the effect of granting an estate to the testator's daughter for life, and, at her death, to persons then in life who then answered the description of the words "legal heirs," such remainder estate, or limitation over, after the death of a daughter, was a contingent remainder. Thus to quote from *Sharman* v. *Jackson*, supra: "Whenever the limitation is contingent by reason that the person or persons to whom it is directed can not be ascertained, as in the case of a limitation to the right heirs of J. S. (then living), no interest will vest in the 'heir' during the life of J. S., nor will it be transmissible or descendible from any one dying before it becomes vested. . . It is a general rule that a remainder limited to the heir or heirs of a living person is a contingent remainder. To this there are certain exceptions, as where there are explanatory expressions showing that they were used in some other sense, as sons, or children, as denoting the persons who at the time are the apparent heirs. Another exception is, when, by the celebrated rule in Shelly's case, the words are to be considered as words of limitation. 2 Fearne, 202. In this instrument, however, there are no explanatory words showing an inten-

tion that they are used as synonymous with children, or sons, or daughters, or that they are intended to designate any particular person, who at its date were the heirs presumptive of the tenant for life; and having already determined that, by reason of the super-added words, the term 'heirs of the body' are taken out of the application of the rule in Shelly's case, they must ex vi termini constitute a contingent remainder by virtue of the maxim, *nemo est hæres viventis."* And in *Harris* v. *McDonald,* supra: "We do not overlook the rule of construction that 'if there be doubt as to whether a remainder is vested or contingent, the remainder will be construed as vested rather than contingent, and as vesting at the earliest opportunity'." But, as said by Mr. Justice George, "no favor to a vested interest can defeat the plain intention of the will in controversy." We can not undertake to distinguish each of the cases cited by plaintiffs in error from the case at bar, without making this decision unduly long; but it is sufficient to say that in those cases *contingent remainders* were clearly declared, and in the instant case such estate is not declared.

*Sharman* v. *Jackson,* 30 *Ga.* 224, was where a deed of gift was executed in 1825. The court held that the words "heirs of the body" did not create an estate tail in the life-tenant; and that the persons who should answer that description at the death of the grantee took the estate as purchasers, and not by descent; that their interest during the life-estate was *contingent* and not vested. Lyon, J., said: "It was insisted that the words 'heirs of the body' must be considered as synonymous with children, and hence that Matilda Sharman, who was a child of the tenant for life, in life at the date of the deed, took a vested remainder, and which on her death before the determination of the life-estate was transmissible to her legal representative. But do these words, when construed to be words of purchase, necessarily mean children? We admit that they may be used as synonymous with children, but we know of no rule of construction which says they must be so taken; and we apprehend that an examination of the cases will show that whenever they have been so interpreted, it has been in consequence of the supposed *intention* [italics ours] as collected from explanatory words contained in the deed or will before the court. They have been construed to mean next of kin. 1 Rich. Eq. 145, per Dunkin, Ch. . . And hence it is a general rule that a remainder limited to the heir or heirs

of a living person is a contingent remainder. To this there are certain exceptions, as where there are explanatory expressions showing that they were used in some other sense, as sons, or children, as denoting the persons who at the time are the apparent heirs. Another exception is, when, by the celebrated rule in Shelly's case, the words are to be considered as words of limitation. 2 Fearne, 202. In this instrument, however, there are no explanatory words showing an intention that they are used as synonymous with children, or sons, or daughters, or that they are intended to designate any particular persons who at its date were the heirs presumptive of the tenant for life; and having already determined that, by reason of the superadded words, the term heirs of the body are taken out of the application of the rule in Shelly's case, they must ex vi termini constitute a contingent remainder, by virtue of the maxim nemo est hæres viventis." At the time the decision in *Sharman* v. *Jackson* was rendered in 1860 the Code had not been adopted or gone into effect. It was adopted on December 19, 1860, but was suspended by the act of 1861 until January 1, 1863. At the time the foregoing decision was rendered the words "heirs," "heirs of the body," "lineal heirs," "lawful heirs," "issue," or words of similar import, did not necessarily mean "children," as they do under the present law as contained in the Civil Code (1910), § 3660, which was of force on August 1, 1908. These words are now construed to mean children, "whether the parents be alive or dead." *Milner* v. *Gay,* supra.

In *Hertz* v. *Abrahams,* 110 *Ga.* 707 (2) (36 S. E. 409, 50 L. R. A. 361), it was held that "A will is to be construed by the law existing when, upon the testator's death, the will takes effect." The testator in the instant case died on August 1, 1908. The words of section 3660 were put in the first Code, § 2229, which went into effect on January 1, 1863, by the act of 1861, and have been carried in subsequent codes. These words were previously construed as words of limitation; but subsequently to the adoption of the Code of 1863 those words and words of similar import were construed to mean *children,* and that word has been taken as a word of purchase, and not of limitation. See *Ewing* v. *Shropshire,* 80 *Ga.* 374, 377, 378 (7 S. E. 554), where Judge Bleckley went exhaustively and ably into the history of the present code sections now under consideration; and while he reached the conclusion in that

case that under the language used by the donor his daughter took an absolute fee, and her child, though in life at the time the deed was executed, acquired no estate in the premises, either as tenant in common or as donee in remainder, the discussion by the learned judge throws much light on the question involved in the present case.

In the Code of 1910 (not annotated) which was adopted on August 15, 1910, section 3660 was evidently inaccurately printed, and as printed is partly unintelligible. But by an examination of each and all of the codes antedating the Code of 1895 this section 3660 appears exactly as printed in the Code of 1860 (in force January 1, 1863), except that in the Code of 1860 a comma instead of a semicolon is placed at the end of the words "whether the parents be alive or dead." In each of the other codes a semicolon follows the words last quoted, and is so punctuated in the opinion rendered by Judge Bleckley in *Ewing* v. *Shropshire,* supra. The Code of 1882 was of force at the date of Judge Bleckley's opinion. The punctuation of the words contained in the original Code of 1860 and subsequent codes may or may not be material. The code section properly punctuated in the Code of 1860 (§ 2229) tends to show that the language in § 3660 of the Code of 1910, to wit, "in being at the time of the vesting of the estate," refers to "and the descendants of deceased children by representation," and does not refer to and does not qualify the word "children." In other words, Code § 3660 (1910), Code § 3084 (1895), Code § 2249 (1882), Code § 2229 (1863), properly punctuated in the second clause thereof, means that "children" shall take in the instances enumerated, and that "the descendants of deceased children, by representation in being at the time of the vesting of the estate, shall take." And the child or children having already taken during the existence of the life-estate a vested remainder, it was not necessary for such child or children to be in esse at the time of the vesting of the estate in possession when the life-estate ended, in order for her heirs to take by inheritance. The foregoing is subject to the rule that the vested remainder in such case may open and take in other children who may be born subsequently to the death of the testator and prior to the death of the life-tenant, etc. Had Mrs. Box, the daughter of Mrs. Lumpkin, in the instant case, died prior to the death of the life-tenant, leaving a child or descendant of child,

such child or descendant of child would have taken as a substituted remainderman, to the exclusion of Mrs. Box's husband. However, Mrs. Box, the daughter of the life-tenant, having died without leaving a child or descendant of child living at the time of the death of the life-tenant, when the estate was to become vested in possession, this defeasible vested remainder in Mrs. Box would descend to her sole heir at law, who was her husband, Mr. Box, and upon the death of the life-tenant, Mrs. Lumpkin, it became the property of Mr. Box absolutely.

In *Crawley* v. *Kendrick,* 122 *Ga.* 183 (50 S. E. 41, 2 Ann. Cas. 643), it was held: "In a devise to A for life, with remainder to his children as a class, a grandchild of A, whose parent died before the death of the testator, can not share in the remainder with the only child of the life-tenant, who was in esse when the title to the remainder vested at the testator's death, and at the time of the vesting of such estate in possession at the life-tenant's death." Judge Simmons, in delivering the opinion of the court, said: "So connecting both clauses, we think that section 3084 [3660 of Code of 1910] means that in limitations over, as, for instance, in a devise to A for life and at A's death to his heirs, heirs of the body, lineal heirs, issue, or words of similar import, such words shall give a vested remainder to the children of A at the testator's death and who might afterwards be born, and in case any such child dies in the lifetime of the life-tenant, his descendants in esse when the life-estate falls in shall take his share by representation; just as is now done in an express devise in remainder to the children of A *and to the descendants of such children who die before the life tenant,* by representation." Even if the foregoing is an obiter expression of the learned judge who wrote it (as contended), it clearly indicates what his opinion was, and is persuasive of what is here being decided, and is in accord with the decision in *Milner* v. *Gay,* supra. See, in this connection, *Hudgens* v. *Wilkins,* 77 *Ga.* 555; *Sumpter* v. *Carter,* 115 *Ga.* 893 (42 S. E. 324, 60 L. R. A. 274); *Fields* v. *Lewis,* 118 *Ga.* 573 (45 S. E. 437); *Johnson* v. *Johnson,* 158 *Ga.* 534 (124 S. E. 18); *Reynolds* v. *Dolvin,* 154 *Ga.* 497 (114 S. E. 879) (defeasible fee). Learned counsel for plaintiffs in error in their brief have given an interesting history of legislation and code sections relating to estates, including the acts of 1821 and 1854, from the early days of the State until the time the codi-

fiers placed in the code what are now §§ 3660, 3661, 3662, etc. This history was also set forth, as already observed, by Judge Bleckley in *Ewing* v. *Shropshire*, supra; and it was stated that section 2229 of the first Code (section 3660 of Code of 1910) was never placed there by authority of the act authorizing the code; that section 3661 was made up partly of the act of 1821, with added words; and that section 3662 of our present code was practically a reproduction of the act of 1854. But whether these code sections were taken from statutes of this State or otherwise, when they were incorporated in the codes and adopted by the legislature of this State, they had the effect of statute law, as decided by this court on several occasions. See *Central of Ga. Ry. Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518).

Did the sixth item of the will of Mr. Garrard create a contingent remainder, as contended by learned counsel for plaintiffs in error, instead of a vested remainder in the children of the life-tenant? Many cases are cited to prove this contention. Considering but not discussing these cases separately, we are of opinion that they were properly decided, and that the remainders created in those cases were contingent, and are not controlling in the instant case. A vested remainder is one limited to a certain person at a certain time, or upon the happening of a necessary event. A contingent remainder is one limited to an uncertain person, or upon an event which may or may not happen. Civil Code (1910), § 3676. "If the remainderman dies before the time arrives for possessing his estate in remainder, his heirs are entitled to a vested-remainder interest, and to a contingent-remainder interest when the contingency is not as to the person but as to the event." § 3677. The law favors vested remainders, and it is an established rule that the court never construes a remainder to be contingent when it can be taken to be vested. *Vickers* v. *Stone,* 4 *Ga.* 461; *Fields* v. *Lewis,* 118 *Ga.* 573, 575 (45 S. E. 437). "The law favors the vesting of remainders in all cases of doubt; and in construing wills, words of survivorship will refer to the death of the testator in order to vest remainders, unless a manifest intention to the contrary appears." *Olmstead* v. *Dunn,* 72 *Ga.* 850, 863. "Various tests have been suggested for determining whether in a given case a future estate is a vested or a contingent remainder. One of these tests is given by Fearne in his work on Remainders, viz., 'The present capacity of

taking effect in possession, if the possession were to become vacant, . . distinguishes a vested remainder from one that is contingent.'" *Schley* v. *Williamson,* 153 *Ga.* 245, 255 (111 S. E. 917). "An estate is vested when there is an immediate right of enjoyment or a present fixed right of future enjoyment. It is the present capacity of taking effect in possession, if the possession were to become vacant, that distinguishes a vested from a contingent remainder. *Wilbur* v. *McNulty,* 75 *Ga.* 458, 463. And see *Burch* v. *Burch,* 23 *Ga.* 536, 548.

So we have reached the conclusion that the trial judge did not err in making the ruling as set out in the statement of facts.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur, except*

RUSSELL, C. J., dissenting. I can not concur in the ruling contained in the third headnote, or in the judgment of affirmance which necessarily follows from that ruling. Considering the will of Mr. Garrard as a whole, I can reach no other conclusion than that the remainders having reference to the "legal heirs" of his three daughters are contingent remainders. It seems to me that the opinion of the majority has subordinated the manifest intention of the testator to the application of the rule in Shelley's case, and has become affected by the bias which compelled the old ecclesiastical courts in the interest of the church and the barons to so construe every conveyance as that it should vest as soon as possible. As said in the opinion of the majority, the testator in this case was no ordinary man. He was one of the greatest lawyers of his time. He so impressed me more than forty-five years ago, when I was associated with him in the General Assembly. This is no ordinary will which the court is now construing. I deem the paramount controlling element in the construction of any will is to give effect to the intention of the testator. It matters not how peculiar may be the desires of a testator as to the disposition of his property after his death. Every man has a right to devise his property by will just as he pleases, provided the disposition does not violate the law. And where the intention of a testator can be gathered from the instrument, rules of law are absolutely valueless; for, as has often been said, the testator's will is the law of that case. The entire estate in this case was devised by the will executed in 1900 to named executors, not to heirs or children. This is one unusual fea-

ture. In a later item of the will the testator again charged these
executors to carry out his wishes. No time was fixed for the delivery
of any property, and, so far as appears from the record, after
thirty years the estate is still undivided. This is in accord with the
wishes of the testator. If the testator had said in terms that the
remainders provided for the legal heirs of his three daughters
were to be treated as contingent remainders, would any one say that
the will of the testator should be disregarded because under the construction
of courts in similar cases such remainders might have
been held to be vested? I think not, because the will of the testator
as to the disposition of his own property would be paramount
to the ruling of the court as to his property, in that it would
only give the testator the right which inheres in him, that of disposing
of his property after his death in accordance with his own desires,
and a court passing upon and construing the will of the
testator in such a case would be compelled to hold that the estate
created was contingent although without the use of such language
in the will the court would otherwise have held the remainder to
be vested. As said by Mr. Underwood in his excellent work on
wills, there is frequently a very fine line which distinguishes a contingent
from a vested remainder. "The difficulty, in construing
the language of the will, of ascertaining whether the testator
intends to give a vested or contingent interest, is very great. The
line of demarcation between vested and contingent future estates
is very fine, and discernible often only with great difficulty. . .
It is not so much the certainty or uncertainty of the enjoyment of
the fee in remainder after the life-estate ends as the uncertainty of
the person who has a present right to enjoy the future estate if the
particular estate came to an end now, which determines the
character of the remainder." It is true that "no future or executory
limitation will be regarded as contingent which may, consistently
with the intention of the testator gathered from the whole
will, be deemed vested." Underwood on Wills, 1299, § 861. What,
then, is a contingent estate? A remainder is contingent where it
may fail to be effective because its existence may depend upon the
happening of events which may or may not take place. If there is
any potency in a well known maxim, "nemo est hæres viventis"
(no one is an heir of a living person), the estate sought to be
devised by Mr. Garrard to his three daughters can not, in my

opinion, be otherwise construed than as a contingent remainder. The facts of this case at the time of the trial absolutely demonstrate the statement just made.

I do not lose sight of the rule of construction that favors vesting of remainders and so vesting them at the earliest opportunity, which has inclined our courts in cases of doubt to hold that certain remainders were vested rather than contingent; but to me it is plain that in this case the vesting of the remainder is made dependent upon the event of the remaindermen surviving the life-tenant. I reach that conclusion not only from the will itself, considering all that is contained within the four corners of the instrument, but from the anomalous results (out of all harmony with the intention of the testator) which will obtain from a construction holding that the testator in this case intended by the use of the words "legal heirs" of his daughters at their death to mean the legal heirs of the daughters at the time of the death of the testator. I am aware that the latter would be the proper construction of the wishes of the testator if it be held that the remainder created by the will is a vested remainder. But can this will be read, bearing in mind the extreme care with which the testator sought to preserve his estate for heirs of his own blood, and sanction a result under which one fourth of the estate of the testator goes to those in whose blood flows not a single drop of the blood of the testator? If such a result is proper under the laws of this State, the law should of course be enforced; but I assert such result can be reached only by strictly applying the law applicable to vested remainders to what seems to me to be remainders clearly contingent in their nature. The learned judge in the court below placed his decision upon only one case, *Milner* v. *Gay*, 145 *Ga.* 858 (supra). Counsel for plaintiffs in error ask that if necessary that case be overruled. To me that case, being only by five Justices, is not controlling and need not be overruled. Furthermore, under the well-settled rule of jurisprudence, it must yield to older decisions which held, in cases where the same point was presented as here, that such remainders as are created by this will are contingent remainders only. It may be remarked in passing that it appears from the will itself that Mr. Garrard was a lawyer, and it may be presumed that he had at least some familiarity with the decisions of the Supreme Court of his own State. He was no doubt familiar, at the time he executed this

will, with the decisions in *Sharman* v. *Jackson*, 30 *Ga.* 224; *Taylor* v. *Meador*, 66 *Ga.* 230; *Darnell* v. *Barlon*, 75 *Ga.* 377; *Watson* v. *Adams*, 103 *Ga.* 733 (30 S. E. 577). The decision in *Milner* v. *Gay*, supra, was delivered several years after his death. If the testator investigated the law on the subject as it stood up to the time of the rendition of the decision in *Milner* v. *Gay*, it was his evident intention to devise contingent remainders to take effect to the legal heirs of his daughters at their death and not at his own death, and he used language appropriate for that purpose. He knew that the rule in Shelley's case had been practically abolished in this State by section 3659 of the Code and the decisions to which I have adverted. So I think the decision of this case could safely be placed upon the principle that the intention of the testator, as derived from the will and the circumstances as evidenced by the will, should control in its construction by the court. I also am of the opinion that in these circumstances, judged by the controlling authorities of this court, this construction is not only not contrary to law but is in accordance with law.

It is a sound maxim which declares that nemo est hæres viventis. No man is an heir while the ancestor lives. Consequently it was said in *Sharman* v. *Jackson*, "Wherever the limitation is contingent by reason that the person or persons to whom it is directed can not be ascertained, as in the case of a limitation to the right heirs of J. S. (then living), no interest will vest in the 'heir' during the life of J. S., nor will it be transmissible or descendible from any one dying before it becomes vested." In that case the court proceeded to say: "It is a general rule that a remainder limited to the heir or heirs of a living person is a contingent remainder. To this there are certain exceptions, as where there are explanatory expressions showing that they were used in some other sense, as sons, or children, as denoting the persons who at the time are the apparent heirs. Another exception is, when, by the celebrated rule in Shelly's case, the words are to be considered as words of limitation. 2 Fearne, 202. In this instrument, however, there are no explanatory words showing an intention that they are used as synonymous with children, or sons, or daughters, or that they are intended to designate any particular persons who at its date were the heirs presumptive of the tenant for life; and having already determined that, by reason of the superadded words,

the term 'heirs of the body' are taken out of the application of the rule in Shelly's case, they must ex vi termini constitute a contingent remainder, by virtue of the maxim nemo est hæres viventis." At the time the will was executed none of the daughters of the testator were married. The testator could not know certainly that all of them would marry, or which one, if any, would marry. He could not foresee whether, if they married, none of them would have children, as Mrs. Rucker had had none, or whether at the time of the death of these daughters any one of them should be survived by children at the time of her death; and certainly he could not tell whether either of them would have children surviving them even at the time of the distribution of his estate, for which no time was fixed. Even now, 22 years since the death of the testator, two of the daughters have no children, and the other has only one surviving child. The whole scheme of the will of the testator was to keep his property in the hands of his own lineal descendants as long as it could be legally done. In item 3 he devised all his property of whatever kind or character "to my executors hereinafter named, to have and to hold the same, during the life of my wife, and at her death to divide the same among my children, share and share alike, subject to the deduction and provisions made for minor children hereinafter expressed in item fifth." In item 4 the testator provided: "Should I survive my wife, in that event I give, bequeath, and devise all of my property, of whatsoever kind or character, real and personal, to my children, share and share alike, subject to the deduction and provisions made for minor children hereinafter expressed in item fifth of this will. The fifth item makes some special provision for such of the testator's children; and though this item has no present pertinent reference to anything except the disposition of certain property for the benefit of his minor children, the testator therein took pains to designate each of his immediate children by the special words "child or children," using the words "child or children" fifteen times in item 5 alone.

In item 6, in providing for a home for each of the testator's daughters, it is provided that the title to "said house and lot shall be taken in the name of said daughter for and during her natural life, and at her death to her legal heirs. I have directed this investment to be made to insure, as far as human foresight can, a

home for each one of my daughters. . . Either or all of my said daughters shall have the right to direct an additional amount out of her share to be added to the said sum of $2500, but the title to said property must in any event be taken as in this item directed. After the investment has been made of a portion of the share of each of my said daughters, as provided for in the foregoing part of this the sixth item of my will, I desire and direct that the remaining portion of the shares of each of said daughters shall be invested in property, either registered bonds or real estate, the *title* [italics mine] of which said property shall be taken in the name of said daughter for and during her natural life, and at her death to her legal heirs." In item 7 the executors are given full power to sell any of the property of the testator; but it is further explicitly provided that "all monies which may come into the hands of my executors, either from maturing investments or otherwise, before the time arrives for the final distribution of my estate, shall be invested in such property as my executors may in their discretion see fit." Item 8 is: "I give to my wife, Annie Leonard Garrard, the entire net income of my estate, for and during her natural life, and I desire and direct my executors to pay the same over to her as rapidly as the same is collected; her receipt for the same shall be ample acquittance to them. I do this knowing that to the best of her ability she will take care of our children." Item 9 names his wife and his three sons as executors of his will and as guardians of the persons and property of his minor children. Through this item, in referring to his children, he calls them children. Item 10 directs the executors to sell his law library and office furniture to his son Frank Urquhart Garrard, for $1000, the library and furniture to be delivered to the son immediately after the testator's death, but the $1000 is to be paid without interest whenever the estate has been distributed. It will be noted that in every instance in the will where the testator refers to his children, he designates them by the special words "child or children," never using the term "legal heirs" to designate such child or children, and he uses these words twenty-four times and in all the items of his will preceding and following item sixth. It is apparent that the testator intended to put a different meaning on the word "children" and the words "legal heirs." In item 6 by special words he expressly limited the estate to be taken by the child or those children or those who were

daughters, whereas nothing was said as to the three shares devised to his sons. None but one learned in the law would have omitted to have made that express limitation in item 4; but the testator was not only familiar with section 3659 of the Code but also knew that "Where there are inconsistent provisions in the same will, the latter must prevail." Section 3922, Civil Code (1910). The testator must have known also that in fact the provisions in items 4 and 6 were not inconsistent, but that item 6 properly only modified a portion of item 4.

The words in item 6 that the title of each daughter's share "shall be taken in the name of said daughter for and during her natural life and at her death to her legal heirs," taken alone, might have fallen within the rule in Shelley's case prior to the Code of 1863, and so in every instance following the first in item 6 the testator used "qualifying words" which control the preceding words, "for and during her natural life, and at her death to her legal heirs," and clearly show that the share of each daughter is expressly limited to a mere life-estate, little more than a mere usufruct, and these superadded words, "for and during her natural life, and at her death to her legal heirs," are clearly without the rule in Shelley's case. In the second paragraph of item sixth the testator requires that after the investment in the home the remaining portions of the shares of each of his daughters shall be invested by his executors in either registered bonds or real estate, that is, that all of such share of said daughter should be invested in such property alone as would require a written title, a title which in the lifetime of the daughter would render the property unsalable. This with the provision that when these investments have been made, "the possession and use" of said property is to be turned over to each of said daughters, and the income, rents, and profits arising therefrom shall be used and enjoyed by them, except that they "shall in no wise create any encumbrance or lien on the life-estate." To me it seems clear that it was the intention of the testator that the remainder estate after the death of each daughter was a contingent remainder falling to her legal heirs, persons who could not be ascertained until the death of each daughter. They were to be persons confined to "her legal heirs," and under the doctrine that no man is heir to a living person any one who was not a legal heir of a daughter was expressly excluded by the testator, as manifest

by his explicit words "her legal heirs." This construction is strengthened and enforced by the fact that when the testator used the word "children" to mean children, he so used it; and therefore when he used the other words "legal heirs," he must have intended something entirely different from "children." Judge Bleckley, in discussing the case of *Wilkerson* v. *Clark,* 80 *Ga.* 367, 370 (supra), and referring to the contention of counsel that the words "heirs of the body," used in the will in that case, did not mean heirs but children, used the following language: "If he meant children in the literal and restricted sense, he could have said so with a single word, and one which was appropriate to his supposed purpose both legally and colloquially." And so in this case it seems to me that if the testator had intended "legal heirs" to mean "children," he could have said so with a single word which would have been appropriate to the purpose now attributed to him. To appropriate to Mr. Garrard's will the language used in *Sharman* v. *Jackson,* supra, which has never been overruled or criticised: In this instrument (Mr. Garrard's will) there are no explanatory words showing an intention that they (the words legal heirs) are used as synonymous with children, or sons, or daughters, or that they are intended to designate any particular person who at his death were the heirs presumptive of the tenant for life; and having already determined that, by reason of the superadded words, the term legal heirs (in *Sharman* v. *Jackson,* heirs of the body) are taken out of the rule in Shelley's case, they must ex vi termini constitute a contingent remainder, by virtue of the maxim, nemo est hæres viventis.

In the following cases very similar to the one now before us, this court has held that the language used created contingent and not vested remainders: *Sharman* v. *Jackson,* 30 *Ga.* 224; *Taylor* v. *Meador,* 66 *Ga.* 230; *City Council of Augusta* v. *Radcliffe,* 66 *Ga.* 469; *While* v. *Rowland,* 67 *Ga.* 546 (supra); *Darnell* v. *Barton,* 75 *Ga.* 377; *Cushman* v. *Coleman,* 92 *Ga.* 772 (supra); *Watson* v. *Adams,* 103 *Ga.* 733 (30 S. E. 577); *Smith* v. *Smith,* 130 *Ga.* 532 (supra); *Lane* v. *Patterson,* 138 *Ga.* 710 (76 S. E. 47); *Cock* v. *Lipsey,* 148 *Ga.* 322 (96 S. E. 628); *Murphy* v. *Murphy,* 151 *Ga.* 438 (supra); *Harris* v. *McDonald,* 152 *Ga.* 18 (supra); *Burton* v. *Patton,* 162 *Ga.* 610 (supra); *Dismukes* v. *Bagley,* 165 *Ga.* 665 (supra).

ON MOTION FOR REHEARING.

HILL, J. Plaintiffs in error filed a motion for rehearing, one ground of which is: "Because the court, in holding that the words 'heirs,' 'heirs of the body,' 'lineal heirs,' 'lawful heirs,' 'issue,' 'and words of similar import,' as used in Code § 3660, did not mean merely those children and descendants of children, by representation of the life-estate, who were living at the death of the life-tenant, overlooked that the decision of the Supreme Court of Georgia, in the case of *Ford* v. *Cook*, 73 *Ga.* 215, decided in the year 1884, subsequent to the adoption of the code, specifically construed Code § 3660 (then Code § 2249) to mean that under said Code § 3660 only such persons should take the limitation over as should be persons living at the time of the death of the life tenant." The *Ford* case was where a testator executed his will in 1856 and died in 1859, and the decision in that case was rendered by this court in 1884. The devise in that case was to a daughter, and at her death to go to her children; and a trust was created in the following language: "and to hold the same in trust for them and their bodily heirs." This court held that the will created an estate for life in the daughter of the testator, with remainder to her children *living at her death*. Counsel for plaintiffs in error say that this court in the *Ford* case specifically construed § 2249 of the code then in existence, but now § 3660 of the Code of 1910; but it does not seem to us that this court did so. In rendering the opinion of the court in the *Ford* case, Hall, J., said: "So far as we can gather the intention of the testator from this very obscure and illy expressed will, we think he designed to give to the mother of the plaintiffs a life-estate only in the property thereby conveyed, with remainder to the children living at her death. The will was executed in 1856, and took effect by the death of the testator three years later. Neither at its date, nor when it took effect, was such a thing as an estate tail by implication recognized by the laws of this State. The effect of our legislation of 1821, and that of 1854, was to forbid the presumption . . . of an estate tail; and where by the English rules of construction such an estate would have been created by implication, our statutes meant that a life-estate should be vested in the first taker, with a remainder over in fee to his children and their descendants. Code, §§ 2250, 2251, and cases cited. See in connection Id. §§ 2248 and 2249; and *Nussbaum & Dannenberg*

v. *Evans,* 71 *Ga.* 753. So we think that there was no error in holding that these plaintiffs took in remainder after the death of their mother." From what we can gather from the facts in the *Ford* case, the language of the court, "with remainder to her children *living at her death"* (italics ours), was obiter dictum; and as pointed out in the opinion of the majority of the court in this case, the language of the will under review here, based on previous decisions of this court, and "at her death to go to her children," would convey a vested remainder to children living at the death of the testator, subject to take in children afterwards born. The cases relied on by plaintiffs in error were those arising upon the construction of either a will or deed made prior to the first code, which contains § 3660 of the Code of 1910; and so far as we are able to see, the question now raised in this case was not raised in those cases. A careful reading of the opinion in the *Ford* case does not compel the conclusion that the court construed Civil Code (1910), § 3660, but merely said: "See in connection Id. §§ 2248 and 2249." But if it be conceded that the court did construe those sections, or intended to construe them, that can not change the result, because those sections were not applicable in construing a will executed in 1856, where the testator died in 1859, and the court in rendering its judgment came out exactly where it would have come out if those sections had never been considered at all. So the result of the consideration of those sections by the court, if it did consider them in connection with the will, amounted to nothing. Its effect on the construction in no way influenced the result, which was in exact accordance with the law as it stood before the adoption of the code. In *Ewing* v. *Shropshire,* 80 *Ga.* 374 (supra), Chief Justice Bleckley made the same observation as to four cited cases, including *Ford* v. *Cook,* to wit: "in each of which the instrument construed antedated the Code." So we adhere to the conclusions reached when this case was first decided. *Rehearing denied.*